**FILED**
Friday, 23 July, 2004  09:57:19 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
Urbana Division

| | |
|---|---|
| LUCILLE BUTLER, individually and as Special Administrator of the Estate of Kevin Lucas, deceased,<br>                              Plaintiff,<br>v.<br><br>KENNETH O'BRIEN, Vermilion County Sheriff; FRANK SPORICH, Sergeant; MARK REYNOLDS, Vermilion County Correctional Officer; MICHAEL SCHULL, Vermilion County Correctional Officer; RICHARD LONG, Vermilion County Correctional Officer; and RAY LLEWWLLYN, Vermilion County Correctional Officer Lt.,<br>                              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 04-2048<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPORT & RECOMMENDATION

      In March 2004, Plaintiff Lucille Butler, acting individually and as Special Administrator of the Estate of Kevin Lucas, filed a Complaint (#1) against Defendants, Vermilion County Deputy Kenneth O'Brien and Sergeant Frank Sporich, and Vermilion County Correctional Officers Sergeant Mark Reynolds, Officer Michael Schull, Officer Richard Long, and Lieutenant Ray Llewellyn, alleging constitutional violations and state law claims. In May 2004, Defendants filed a Motion To Dismiss Counts I, II, and V of Plaintiffs' Complaint and To Strike Counts VI-VIII of the Complaint to the Extent That They Seek To Recover for Mere Negligence (#7).

      After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion To Dismiss Counts I, II and V of Plaintiffs' Complaint and To Strike Counts VI-VIII of the Complaint to the Extent that They Seek To Recover for Mere Negligence **(#7)** be **GRANTED in part** and **DENIED in part.**

I.  Background

The following background is taken from the complaint.  Plaintiff Lucille Butler was the mother of the deceased, Kevin Lucas, and brings this action as the special administrator of her son's estate.  (#1, ¶ 2.)  Defendants were, at the time of the occurrence, employed as correctional officers and deputies of Vermilion County and acting under the color of law.  Plaintiff is suing them in their individual capacities.  (#1, ¶¶ 4, 5.)

In May 2003, Kevin Lucas (hereinafter "Lucas"), was allegedly acting erratically at or near trailers in Danville, Illinois.  (#1, ¶ 6.)  Lucas knocked on a resident's door and asked the occupant to call the police because someone was trying to kidnap him, and the resident called 911.  (#1, ¶ 7.)  Shortly thereafter, Defendant O'Brien arrived on the scene.  Lucas tried to enter the police car when it arrived, but the doors were locked.  (#1, ¶ 8.)  O'Brien had a short conversation with Lucas and believed that Lucas was high on drugs, so O'Brien told Lucas to relax and take deep breaths.  (#1, ¶¶ 9, 10.)  O'Brien saw that Lucas was carrying an inhaler for asthma, and O'Brien had a history of asthma himself so he knew of the risks associated with asthma.  (#1, ¶ 11.)  O'Brien also saw that Lucas had a white ring of saliva around his mouth. (#1, ¶ 12.)

Defendant O'Brien placed Lucas under arrest.  When O'Brien attempted to place Lucas in the police car, Lucas' body went limp and fell to the ground.  (#1, ¶ 14.)  Defendant Sporich arrived on the scene while O'Brien was attempting to put Lucas in the police car, and eventually, the officers handcuffed Lucas and placed him into O'Brien's car.  (#1, ¶¶ 15, 16.)  O'Brien then drove Lucas to the Vermilion County Public Safety Building.  (#1, ¶ 18.)

Defendants at the Vermilion County Public Safety Building placed Lucas in a padded cell without searching or booking Lucas.  They knew that their actions created a strong likelihood of death or great bodily harm, because Lucas did not appear to be in "his right mind" and was not acting normal.  (#1, ¶ 19.)  Furthermore, Defendants did not assess Lucas for physical or mental status or refer him to a health care professional for assessment prior to placing him in the cell. (#1, ¶ 21.)

Before, during, and after being placed in the padded cell, Defendants believed that Lucas was extremely high on narcotics or drunk, had asthma, and was not carrying an inhaler to treat his asthma. (#1, ¶ 22.) After placing Lucas in the padded cell, Defendant Reynolds told Defendant Llewellyn that Lucas was either high or drunk and that Llewellyn should keep an eye on Lucas because he was asthmatic and did not have an inhaler. (#1, ¶ 23.) Defendants placed Lucas in the padded cell at approximately 7:00 a.m., and he was pronounced dead in the cell at 11:33 a.m. (#1, ¶ 25.)

At all relevant times, Lucas was under Defendants' control, and Defendants created the dangers that resulted in his death. (#1, ¶ 26.) Once in the custody of the Sheriff's officers and the county correctional officers, Lucas was not free to obtain his own medical treatment and had to rely upon Defendants for medical attention. (#1, ¶ 27.)

Plaintiff's complaint alleges eight counts, as follows: Count I alleges that Defendants O'Brien and Sporich (hereinafter "Deputies") failed to provide proper medical attention. Count II alleges that Defendants Llewellyn, Reynolds, Schull, and Long (hereinafter "Correctional Officers") failed to provide proper medical attention. Count III alleges that Defendant Deputies violated Lucas' due process rights. Count IV alleges that Defendant Correctional Officers violated Lucas' due process rights. Count V alleges that all Defendants violated Lucas' constitutional rights by failing to protect Lucas. Count VI alleges that Defendant Correctional Officers violated their state law duty to protect Lucas. Count VII alleges a claim under the Illinois Wrongful Death Act (740 ILCS 180/1), and Count VIII alleges a claim under the Family Expense Act (750 ILCS 65/15). The motion to dismiss pertains to Counts I, II, and V, and the motion to strike addresses Counts VI, VII, and VIII. Plaintiff has not responded to the motions.

## II. Standard of Review
### A. Motion To Dismiss

The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss, the Court

must accept all well-pleaded factual allegations in the claim as true, and draw all reasonable inferences in favor of the nonmoving party. *Gutierrez v. Peters,* 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the claim only if the nonmoving party cannot prove any set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power,* 111 F.3d 1312, 1319-20 (7th Cir. 1997).

### B. Motion To Strike

Under Federal Rules of Civil Procedure 12(f), the Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Immaterial matter is defined as that which has no relationship to the cause of action pled." *VPHI v. Nat'l Educ. Training Grp.,* No. 94 C 5559, 1995 WL 51405, at *3 (N.D. Ill. Jan. 20, 1995). Motions to strike are generally not favored, and the Court will not strike matter from a complaint "unless it is clear that it can have no possible bearing on the matter of the litigation." *Patel v. Bd of Governors of State Coll. and Univ.,* No. 92 C 8300, 1995 WL 573418, at *3 (N.D. Ill. Sept. 22, 1992). "Furthermore, pleadings are generally not stricken unless the moving party will be prejudiced otherwise." *Id.*

### III. Analysis

Defendants argue that the Court should dismiss Counts I, II, and V because Plaintiff failed to state a claim against Defendants under the Fourth Amendment. Defendants also argue that the Court should strike Plaintiff's state law claims (Counts VI, VII, and VIII) to the extent that Plaintiff seeks to recover damages for conduct that is merely negligent.

### A. Fourth Amendment Claims

Defendants argue that Counts I, II, and V of Plaintiff's complaint allege that Defendants violated Lucas' "right to life" under the Fourth Amendment. Defendants contend that the Fourth Amendment does not apply to these facts and thus the Court should dismiss these counts.

Defendants correctly point out that Lucas, as a pretrial detainee, is constitutionally protected by the due process guarantee of the Fourteenth Amendment, rather than the Fourth

4

Amendment. *Payne for Hicks v. Churchich,* 161 F.3d 1030, 1041 (7th Cir. 1998) (the due process clause of the Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of pretrial detainees); *see Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir. 1992) (a pretrial detainee is constitutionally protected from punishment by the Fourteenth Amendment). A detainee establishes a claim of deliberate indifference by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger. *Mathis v. Fairman,* 120 F.3d 88, 91 (7th Cir. 1997) (stating that "a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it").

Applying the liberal notice-pleading standard to these claims, the Court concludes that Plaintiff has adequately alleged claims in Counts I, II, and V that Defendants were deliberately indifferent to Lucas' serious medical needs. Plaintiff's reference to the Fourth Amendment rather than the Fourteenth Amendment does not change that. In fact, the complaint refers to the Fourteenth Amendment. (#1, ¶¶ 29, 33, 53.) Thus, the Court recommends denying Defendants' motion to dismiss Counts I, II, and V.

### B. State Law Claims
### 1. Violation of Duty To Protect: Special Relationship

Defendants next argue that the Court should strike Count VI of Plaintiff's complaint to the extent that it alleges negligence. Defendants claim immunity for negligent acts under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Tort Immunity Act") (745 ILCS 10/4-105), which states that:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

Section 10/1-210 of the Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."

5

(745 ILCS 10/1-210.) Therefore, Defendants argue that Plaintiff's state law claim is only valid as to Defendants' willful and wanton misconduct.

Plaintiff alleges that Defendants created a special relationship between Defendants and Lucas by their actions and thus Defendants had a special duty toward Lucas. Defendants, however, correctly argue that the special duty doctrine cannot be used to circumvent the immunities provided to governmental entities under the Tort Immunity Act. *See Harinek v. 161 N. Clark St. Ltd. P'ship,* 692 N.E.2d 1177, 1183 (Ill. 1998) (the special duty doctrine operates only as an "exception to the public duty rule in cases in which the legislature has not granted immunity to the municipality"). Accordingly, the Court recommends granting Defendants' motion to strike any reference to negligence in Count VI.

### 2. Claim Under the Wrongful Death Act

Defendants next argue that the Court should strike Count VII to the extent that it alleges negligence.

The Illinois Wrongful Death Act (740 ILCS 180/1) states as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. No action may be brought under this Act if the decedent had brought a cause of action with respect to the same incident or occurrence which was settled or on which judgment was rendered.

Plaintiff alleges in the complaint that Lucas' death was proximately caused by the reckless, willful and wanton, and malicious conduct of the individual Sheriff's officers and correctional officers, as well as their negligent conduct under the special duty to protect Lucas that they created.

As the Court stated above, any claim relating to negligent conduct in violation of the special duty doctrine is barred. *See Harinek,* 692 N.E.2d at 1183 (the special duty doctrine

operates only as an "exception to the public duty rule in cases in which the legislature has not granted immunity to the municipality"). Accordingly, the Court recommends granting Defendants' motion to strike any reference to negligence in Count VII.

### 3.  State Claim Under the Family Expense Act

Plaintiff Butler alleges that the Illinois Family Expense Act (750 ILCS 65/15) entitles her to reimbursement of funds advanced by her for funeral expenses and medical expenses for Lucas. Defendants move to strike this claim to the extent that Plaintiff Butler alleges negligence.

Plaintiff Butler is barred from bringing a state claim under the Family Expense Act if her son Lucas was not a minor at the time of his death. *See Ragan v. Protko,* 383 N.E.2d 745, 748 (Ill. 1978) (the liability of a parent for medical services and funeral expenses furnished to a child does not extend to an adult child capable of earning his own living at the time of reaching majority). Because Plaintiff did not state Lucas' age at the time of his death, and the Court must make all reasonable inferences in light favorable to Plaintiff, the Court will assume that Lucas was a minor. However, if Lucas had achieved majority by the time of the incident, Defendants can raise the issue in a subsequent motion to dismiss, or Plaintiff can voluntarily dismiss the count.

Therefore, the Court must determine whether the Tort Immunity Act bars Plaintiff's claim under the Family Expense Act. Although Plaintiff did not expressly allege willful and wanton misconduct within Count VIII, the Court can infer it from the complaint. (#1, ¶ 29.) Any allegations of negligence within this claim are barred by the Tort Immunity Act for the reasons stated above. Thus, the Court recommends granting Defendants' motion to strike any reference to negligence in Count VIII.

### IV.  Summary

For the reasons set forth above, this Court recommends that Defendants' Motion To Dismiss Counts I, II, and V of Plaintiff's Complaint and to Strike Counts VI-VIII of the Complaint to the Extent that they Seek to Recover for Mere Negligence **(#7)** be **GRANTED** as to striking all references to negligence in Counts VI, VII, and VIII and **DENIED** as to

dismissing Counts I, II, and V.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 22nd day of July, 2004.



s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE

H:\Inbox\rec\2004\butler v vermilion.04-2048.R&R.wpd