**E-FILED**
Monday, 02 May, 2005  03:47:56 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CENTRAL DIVISION**

| | |
|---|---|
| LUCILLE BUTLER, individually, and as Special Administrator of the Estate of KEVIN LUCAS, deceased. ) ) ) | No.  04 CV 2048 |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| VERMILLION COUNTY SHERIFF W. PATRICK HARTSHORN, COUNTY SHERIFF KENNETH O'BRIEN, SERGEANT FRANK SPORICH, VERMILLION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG, AND LT. RAY LLEWWLLYN, ) ) ) ) ) ) ) | Jury Demand |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

### JURISDICTION

1.    The jurisdiction of the court is invoked pursuant to the Civil Rights Act,  42 U.S.C. sections 1983 et seq. and 1988; the Judicial Code, 28 U.S.C. sections 1331, and 1343(a); the Constitution of the United States; and supplemental jurisdiction pursuant to 28 U.S.C. section 1367.

### PARTIES

**Plaintiff**

2.    Plaintiff Lucille Butler was the mother of the deceased, Kevin Lucas, and brings

1

this action as the special administrator of her son's estate.   At all relevant times the decedent lived at 1014 Cleveland, Danville, Illinois.

**Defendants**

3.    Vermillion County Sheriff W. Patrick Hartshorn (hereafter "County Sheriff") was, at all relevant times, the Sheriff of Vermillion County, an elected county official, whose duties included implementing and executing policies, and training his employees on the correct procedures for handling inmates in the county jail.   Hartshorn is being sued in his official capacity.

4.    Vermillion County Sheriff Defendants Deputy Sheriff K. O'Brien ("O'Brien") and Sergeant F. Sporich ("Sporich") were, at the time of the occurrence, duly appointed Vermillion County Sheriffs engaged in the conduct complained of in the course and scope of their employment with Vermillion County Sheriffs, under color of law, and while they were on duty. They are sued in their individual capacities.

5.    Vermillion County Correctional Officer Defendants Lt. Ray Llewellyn, (Llewellyn), Sergeant Mark Reynolds ("Reynolds"), Officer Michael Schull ("Schull"), and Officers Richard Long III ("Long") were, at the time of the occurrence, duly appointed Vermillion County Correctional Officers engaged in the conduct complained of in the course and scope of their employment with Vermillion County, under color of law, and while they were on duty. They are sued in their individual capacities.

<u>**FACTS COMMON TO ALL COUNTS**</u>

6.    In the morning hours of May 10, 2003, Kevin Lucas ("Kevin") was allegedly acting erratically at or near the trailers at 701 S. Griffin, Lot 1, Danville, Illinois.

2

7.    Kevin was allegedly knocking on the residents door at the above address asking that the occupant call the police because someone was trying to kidnap him. The occupant called 911 seeking that a officer be dispatched to the above location.

8.    Shortly thereafter, Defendant O'Brien arrived on the scene.  Kevin allegedly attempted to enter the police car when it arrived but the doors where locked.

9.    O'Brien had a short conversation with Kevin, and determined and believed that Kevin was high on drugs.

10.    O'Brien repeatedly instructed Kevin to relax and instructed him to take a deep breaths.

11.    O'Brien saw that Kevin was carrying an inhaler for asthma.  O'Brien had a history of asthma and was well aware of the risks associated with individuals with asthma.

12.    O'Brien allegedly saw that Kevin had a white ring of saliva around his mouth.

13.    Kevin was placed under arrest by O'Brien.

14.    During the arrest process, Kevin's body would go limp and fall to the ground when O'Brien attempted to place Kevin into the police car.

15.    Defendant Sporich arrived on th scene while O'Brien was attempting to put Kevin into the police car.

16.    Kevin was handcuffed and placed into O'Brien's car.

17.    At no time prior to being handcuffed did Kevin strike either O'Brien or Sporich.

18.    Kevin was then driven to the Vermillion County Public Safety Building and taken to the book-in area.

19.    Without searching Kevin and without processing him in booking, and knowing

3

their actions and/or omissions created a strong likelihood of death or great bodily harm, the defendants place him Kevin in a padded cell, in part, because he did not appear to be in his "right mind," and was not acting normal.

20.    It was apparent to the defendants that Kevin was not acting normal during the entire time they had contact with him.

21.    Kevin was placed into a county jail padded cell alone without being assessed for physical or mental status by any of the defendants, and without being referred to a health care professional for assessment.

22.    Before, during and after being placed in the padded cell, defendants believed Kevin was extremely high on narcotics and/or drunk, had asthma and was not carrying an inhaler to treat his asthma.

23.    After placing Kevin in the padded cell, Sgt. Reynolds notified Lt. Llewellyn that Kevin as in the padded cell, that Kevin was either high or drunk and that Llewellyn should keep an eye on Kevin because he was asthmatic and did not have an inhaler.

24.    At know time prior to his death did any of the defendants seek or provide medical treatment for Kevin.

25.    Kevin was placed in the padded cell at approximately 7:00 am. on May 10, 2003, and was pronounced dead in the cell at 11:33 am. on May 10, 2003.

26.    At all relevant times decedent was under the control of the defendants, and the defendants created the dangers that resulted in his death.

27.    Once in police and county correctional officer custody, Kevin was not free to obtain his own medical treatment and had to rely upon the police and/or correction officers for

4

medical attention.

28.    At all relevant times the defendants actions and/or omissions were negligent, wilful, wanton, and/or in reckless disregard for the decedent's constitutional rights.

## COUNT I
### [§ 1983 4th Amendment Claim for Failure to Provide Medical Attention -Sheriff Defendants]

29.    Plaintiff realleges paragraphs 1 through 28 as his paragraph 29.

30.    The county sheriff defendants O'Brien and Sporich's a) failure to take any action whatsoever to treat, relieve, or revive Kevin, or to provide him with emergency medical care after taking him into custody, during or after placing him the padded cell knowing these acts and/or omissions  created a strong likelihood of death or great bodily harm constituted a failure to fulfill their duty to provide medical attention. This failure to provide any medical attention, assistance and care included not contacting anyone for medical assistance, not informing anyone about the probability that decedent needed medical assistance, failing to turning him over to observe him prior to leaving him in the padded cell,  not sitting him up prior to leaving him in the padded cell, not removing his hand restraints, not clearing his airway, not providing cardiovascular resuscitation, and/or not providing for, requesting, or seeking, emergency assistance to do any of the above. Above defendants' failure to act caused Kevin to be incapable of being revived,  pain, suffering and, ultimately, his death. Such failure to fulfill their duty to provide medical attention deprived him of his right to life as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

31.    These acts and omissions by the individual sheriff defendants proximately caused

5

plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the defendants restrained him until his death.

32.     The acts and omissions by the individual sheriff defendants also proximately caused the death of Kevin Lucas.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the individual sheriff defendants, jointly and severally for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's constitutional rights, plaintiff demands substantial punitive damages from these defendants, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT II
### [§ 1983 4th Amendment Claim for Failure to Provide
### Medical Attention - Correctional Officer  Defendants]

33.      Plaintiff realleges paragraphs 1 through 28 as his paragraph 33.

34.     The Correctional Officer Defendants Llewellyn, Reynolds, Schull, and Long a) failure to take any action whatsoever to treat, relieve, or revive Kevin, or to provide him with emergency medical care after taking him into custody or after placing him the padded cell knowing these acts and/ or omissions  created a strong likelihood of death or great bodily harm constituted a failure to fulfill their duty to provide medical attention. This failure to provide any medical attention, assistance and care included not turning him over, not sitting him up, not removing his hand restraints, not clearing his airway, not providing cardiovascular resuscitation,

6

and/or not providing for, requesting, or seeking, emergency assistance to do any of the above. Additionally, Defendant Llewellyn failed to properly supervise Defendants Reynolds, Schull, and Long after he learned that decedent was in a padded cell intoxicated, asthmatic and without his inhaler. Above defendants' failure to act caused Kevin to be incapable of being revived, pain, suffering, and ultimately, his death. Such failure to fulfill their duty to provide medical attention deprived him of his right to life as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

35. These acts and omissions by the individual correctional officer defendants proximately caused plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the defendants restrained him until his death.

36. The acts and omissions by the individual correctional officer defendants also proximately caused the death of Kevin Lucas.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the individual correctional officer defendants, jointly and severally for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's constitutional rights, plaintiff demands substantial punitive damages from these defendants, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT III
### [Due Process Violation -Sheriff Defendants]

37.    Plaintiff realleges paragraphs 1 through 36 as his paragraph 37.

38.    The county sheriff defendants O'Brien and Sporich's wilfully, wantonly and/or in reckless disregard for the safety of the decedent a) failed to followed well established procedures to ensure the safety of the decedent prior to placing him alone in a padded cell by failing to search the decedent for narcotics or weapons on his person that could be used to injure Kevin; b) failed to monitor the decedent to ensure that he was not unconscious or in need of medical attention; c) failed to ensure that decedent had his inhaler; and d) failed to contact a medical provider to counteract any dangerous effects of any narcotics that the decedent may have taken prior to his incarceration.  These failures, separately or in the aggregate, to act caused Kevin to be incapable of being revived,  pain, suffering and, ultimately, his death. Such failure to fulfill their duty to provide follow these custodial procedures violated the decedent's Due Process rights guaranteed by the Fourteenth Amendments to the United States Constitution.

39.    These acts and omissions by the individual sheriff defendants proximately caused plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the defendants failed to search him until his death.

40.    The acts and omissions by the individual sheriff defendants also proximately caused the death of Kevin Lucas.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Independent Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the

2:04-cv-02048-MPM-DGB    # 26    Page 9 of 17

individual sheriff defendants, jointly and severally for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's constitutional rights, plaintiff demands substantial punitive damages from these defendants, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

### COUNT IV
### [Due Process Violation - Correctional Officer  Defendants]

41.        Plaintiff realleges paragraphs 1 through 40 as his paragraph 41.

42.        The county correctional officer defendants Llewellyn, Reynolds, Schull, and Long wilfully, wantonly and/or in reckless disregard for the safety of the decedent a) failed to followed well established procedures to ensure the safety of the decedent prior to placing him alone in a padded cell by failing to search the decedent for narcotics or weapons on his person that could be used to injure Kevin; b) failed to monitor the decedent to ensure that he was not unconscious or in need of medical attention; c) failed to ensure that decedent had his inhaler; and d) failed to contact a medical provider to counteract any dangerous effects of any narcotics that the decedent may have taken prior to his incarceration. Additionally, Defendant Llewellyn failed to properly supervise Defendants Reynolds, Schull, and Long, or anyone else, after he learned that decedent was in a padded cell intoxicated, asthmatic and without his inhaler. These failures, separately or in the aggregate, to act caused Kevin to be incapable of being revived,  pain, suffering and, ultimately, his death. Such failure to fulfill their duty to provide follow these custodial procedures violated the decedent's Due Process rights guaranteed by the Fourteenth Amendments to the United States Constitution.

9

43.    These acts and omissions by the individual correctional officers defendants proximately caused plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the defendants failed to search him until his death.

44.    The acts and omissions by the individual defendants also proximately caused the death of Kevin Lucas.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the individual correctional officer defendants, jointly and severally for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's constitutional rights, plaintiff demands substantial punitive damages from these defendants, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT V
### [§ 1983 4th Amendment Claim for Failure to Protect - All Defendants]

45.    Plaintiffs reallege paragraphs 1 through 44 as his paragraph 45.

46.    The acts of the defendants O'Brien, Sporich, Llewellyn, Reynolds, Schull, and Long  in failing to protect Kevin Lucas from each other's, and the other defendant's, deadly acts which included a) allowing Kevin to be placed in a cell without being searched, b) allowing Kevin to be placed in a cell without being physically or mentally assessed, and failing to contact a health care professional, c) failing to take any action to guarantee that if he had an asthma attack that he had an asthma inhaler, knowing these acts and their failure to protect Kevin from

10

these acts created a substantial risk of death or great bodily harm deprived Kevin of his right to life in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

47.    Said act of these defendants caused pain and suffering to the deceased Kevin Lucas, and ultimately his death.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the individual correctional officer defendants, jointly and severally for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's constitutional rights, plaintiff demands substantial punitive damages from these defendants, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT VI
### [Plaintiff's <u>Monell</u> Policy Practice and Customs Claim Against Sheriff Hartshorn]

48.    Plaintiffs reallege paragraphs 1 through 47 as his paragraph 48.

49.    The actions of the defendants as alleged above, were done pursuant to one or more *de facto* policies, practices and/or customs of the Vermillion County Sheriff's Office.

50.    On and before May 10, 2003, the defendant County Sheriff had interrelated *de facto* policies, practices, and customs which included, <u>inter alia,</u> the failure to properly train, supervise, discipline, transfer, counsel and otherwise control county correctional officers engaged in the processing and monitoring of county jail detainees and/or inmates.

51.    In particular, the Vermillion County Sheriffs and the county correctional officers were not properly trained or supervised  in: 1) how to assess new detainees and/or inmates; 2)

11

when to refer the new detainees and/or inmates to a physician for medical assistance; 3) when new detainees and/or inmates mental status required medical assistance; 4) how to frisk and/or search new detainees and/or inmates; and, 5) how to monitor detainees and/or inmates with altered mental status, with asthma and/or on illegal narcotics. This failure to train and supervise by the County Sheriff  was done with the knowledge that the county correctional officers were certain to confront such persons and that without adequate training created a substantial risk of death or great bodily harm to detainees and/or inmates and Kevin Lucas' right to life in violation of the Fourth and Fourteenth Amendments to the United States Constitution..

52.    The County Sheriff's lack of training, supervision, policy, procedure, custom or practice created a *de facto* policy of failing to properly assess and monitor detainees and/or inmates suffering from altered mental states, physical ailments, and/or on narcotics or intoxicated.  The *de facto* policy constituted a widespread practice and was so well settled to establish a custom or usage with the force of law.

53.    Said act of these defendants caused pain and suffering to the deceased Kevin Lucas, and ultimately his death.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against W. Patrick Hartshorn, as the Vermillion County Sheriff, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT VII
### [§1983 Unreasonable and Excessive Force Claim]

54.    Plaintiffs reallege paragraphs 1 through 53 as his paragraph 54.

12

55.     Prior to placing Kevin Lucas in a padded cell the defendants struck Kevin Lucas about the head and body.

56.     When placing Kevin Lucas into the padded cell the defendants placed him chest-down on the floor handcuffed behind has back and holding his feet.

57.     While restraining Kevin Lucas chest-down, one or more the defendants then knelt on his back and neck in an attempt to apply pressure to those areas to prevent Kevin Lucas from moving.

58.     The acts of the defendants in a) placing Kevin Lucas chest-down on the floor while cuffed behind his back and applying pressure to his neck and body, b) failing to protect him from said restraint while having the opportunity and duty to do so, and c) failing to properly monitor him after applying this pressure, knowing that he was asthmatic and acting usual,  was an excessive use of force, constituted an unreasonable seizure and deprived him of his right to be free from an unlawful seizure and his right to life as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

59.     These acts and omissions by the defendant sheriffs and correctional officers proximately caused plaintiff's decedent, Kevin Lucas, to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the defendant restrained him until his death several minutes to hours later.

60.     The acts of the defendants was also a proximate cause the death of Kevin Lucas.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the individual correctional officer defendants, jointly and severally for the decedent's physical and emotional

13

trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants

acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's

constitutional rights, plaintiff demands substantial punitive damages from these defendants, as

well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

### COUNT VIII
### [State Law- Violation of Duty to Protect -
### Special Relationship - Correctional Officer Defendants]

61.     Plaintiffs reallege paragraphs 1 through 60 as his paragraph 61.

62.     Defendant county correctional officer defendants Llewellyn, Reynolds, Schull,

and Long, initiated the circumstances which created the danger to Kevin Lucas by placing him in

a padded cell, placing him in a prone position in the cell, failing to monitor him, failing to

contact a health care professional despite knowing that Kevin was acting erratically, knowing he

was asthmatic and did not have his asthma inhaler, and knowing that such acts created a

likelihood of death or great bodily harm.

63.     From the time Kevin Lucas was brought into the county jail Kevin Lucas was in

the direct and immediate control of the correctional defendants up to and including at the time of

his death; Kevin was made totally helpless as a result of the defendants' acts.

64.     The actions of these defendants as set forth in paragraphs 1 through 57 above

created a special relationship between the correctional officer defendants and Kevin Lucas

created a duty to exercise reasonable care in protecting and providing medical care to Kevin

Lucas; this included the duty to monitor his condition, the duty to remove him from the

dangerous and potentially deadly position they placed him in, and  by failing to remove Kevin

from the padded cell and providing  him with medical attention, CPR and/or other life-saving

14

medical care when they knew his condition would likely and in fact did worsen and become life threatening.

65.     The defendants' actions and inactions toward Kevin Lucas after incarcerating him, of leaving him lying face down in a padded cell floor for a substantial period of time, not monitoring his pulse, breathing or general condition during his incarcerated, and failing to provide him with medical attention or care, negligently, willfully, wantonly, and/or in reckless disregard of his safety, breached their duty to provide reasonable care to Kevin Lucas, and caused plaintiff's decedent pain, suffering, the terror of slowly dying, loss of consciousness, and death.

WHEREFORE, the plaintiff, LUCILLE BUTLER, as Special Administrator of the Estate of KEVIN LUCAS, deceased, demands substantial compensatory damages against the individual correctional officer defendants, jointly and severally for the decedent's physical and emotional trauma, pain, injury, suffering, humiliation, and death, and additionally, because the defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the decedent's constitutional rights, plaintiff demands substantial punitive damages from these defendants, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

.                                **COUNT IX**
                    **[Wrongful Death Claim Under Illinois Law]**

66.     Plaintiff reallege paragraphs 1 through 65 as his paragraph 66.

67.     Plaintiff-decedent was and is survived by his mother Lucille Butler, son Kentavious Lucas, son Grayson Reed and daughter Indya Reed.

68.     Decedent was officially pronounced dead on May 10, 2003.

69.     The wrongful death of plaintiff-decedent was proximately caused by the reckless,

willful and wanton and malicious conduct of the individual police, correctional officers and county sheriff, as described above, as well as their negligent conduct in violation of the special duty to protect which they created to the decedent, in violation of 740 ILCS 180/1.

70.    As next of kin, plaintiff's mother and children have lost and will continue to lose, pecuniary support, as well as society and companionship, and guidance, as a proximate result of the wrongful death of plaintiff decedent.

WHEREFORE, the plaintiff, Lucille Butler, as Special Administrator of the Estate of Kevin Lucas, deceased, demands substantial compensatory damages, jointly and severally, against all the individual defendants named in this action, and such other relief as this Court deems just and equitable.

## COUNT X
### [State Claim Under the Family Expense Act]

71.    Plaintiff Lucille Butler realleges paragraphs 1 through 65 as her paragraph 71.

72.    Plaintiff Lucille Butler was the decedent's mother.

73.    Plaintiff Lucille Butler advanced the funds necessary for the funeral of Kevin Lucas and other related expenses.

74.    The said advances benefitted the family and helped to maintain it's integrity.

75.    The Illinois Family Expense Law, 750 ILCS 65/15 entitles Lucille Butler to reimbursement for the said advances.

WHEREFORE, the Plaintiff Lucille Butler demands reimbursement for funeral expenses of Kevin Lucas and related expenses such as medical expenses, advanced by her, as well as costs, attorneys fees, and what ever additional relief this Court deems equitable and just.

16

**PLAINTIFF DEMANDS A TRIAL BY JURY**

_____

**s/ Dennis J. DeCaro**
DeCaro Bar Number: 6230675
Attorney for the Plaintiffs
Kupets & DeCaro, P.C.
30 N. LaSalle Street, Suite 4020
Chicago, Illinois 60602
Telephone: 312-372-4444
Fax: 312-726-7347
E-mail: djd0089@aol.com