**E-FILED**
Tuesday, 24 May, 2005  12:12:32 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| LUCILLE BUTLER, individually, and as | ) | |
| Special Administrator of the Estate of | ) | |
| KEVIN LUCAS, deceased, | ) | |
| | ) | No. 04 CV 2048 |
| Plaintiffs, | ) | |
| | ) | The Honorable Michael P. McCuskey |
| v. | ) | Magistrate Judge David G. Bernthal |
| | ) | |
| VERMILLION COUNTY SHERIFF | ) | |
| W. PATRICK HARTSHORN, COUNTY | ) | |
| SHERIFF KENNETH O'BRIEN, SERGEANT | ) | |
| FRANK SPORICH, VERMILLION COUNTY | ) | |
| CORRECTIONAL OFFICERS SERGEANT | ) | |
| MARK REYNOLDS, OFFICER MICHAEL | ) | |
| SCHULL, OFFICER RICHARD LONG, AND | ) | |
| LT. RAY LLEWWLLYN, | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

NOW COME the Defendants, VERMILION COUNTY SHERIFF W. PATRICK

HARTSHORN, in his official capacity only, KENNETH O'BRIEN, SERGEANT

FRANK SPORCICH, VERMILION COUNTY CORRECTIONAL OFFICERS

SERGEANT MARK REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER

RICHARD LONG and LIEUTENANT RAY LEWELLYN, by and through one of their

attorneys, MICHAEL W. CONDON of HERVAS, SOTOS, CONDON & BERSANI,

P.C., and, in answer to Plaintiffs' amended complaint state as follows:

## JURISDICTION

1.     The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. sections 1983 et seq. and 1988; the Judicial Code, 28 U.S.C. sections 1331, and 1343(a); the Constitution of the United States; and supplemental jurisdiction pursuant to 28 U.S.C. section 1367.

**ANSWER:**  Defendants admit the jurisdiction of this Court.

## PARTIES

**Plaintiff**

2.     Plaintiff Lucille Butler was the mother of the deceased, Kevin Lucas, and brings this action as the special administrator of her son's estate.  At all relevant times the decedent lived at 1014 Cleveland, Danville, Illinois.

**ANSWER:**     Defendants admit that Lucille Butler is the mother of decedent, Kevin Lucas.  Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 2 and, therefore, neither admit nor deny said allegations.

3.     Vermillion [sic] County Sheriff W. Patrick Hartshorn (hereafter "County Sheriff") was, at all relevant times, the Sheriff of Vermillion [sic] County, an elected county official, whose duties included implementing and executing policies, and training his employees on the current procedures for handling inmates in the county jail. Hartshorn is being sued in his official capacity.

**ANSWER:**     Defendants admit that W. Patrick Hartshorn is the duly elected Sheriff of Vermilion County and is sued only in his official capacity.  Defendants

2

further admit only that Sheriff Hartshorn has those responsibilities as set forth by state statute under Illinois law.

4.    Vermillion [sic] County Sheriff Defendants Deputy Sheriff K. O'Brien ("O'Brien"), and Sergeant F. Sporich ("Sporich") [sic] were, at the time of the occurrence, duly appointed Vermillion [sic] County Sheriffs engaged in the conduct complained of in the course and scope of their employment with Vermillion [sic] County Sheriffs, under color of law, and while they were on duty.  They are sued in their individual capacities.

**ANSWER:**    Defendants O'Brien and Sporcich admit only that they were acting within the scope of their employment as deputy sheriffs at the time of the incident in question.  Defendants make no response to the allegations that they were acting under the color of law or that they are being sued in their individual capacity because said allegations state a legal conclusion.

5.    Vermillion [sic] County Correctional Officer Defendants Lt. Ray Llewellyn, (Llewellyn), Sergeant Mark Reynolds ("Reynolds"), Officer Michael Schull ("Schull"), and Officers Richard Long III ("Long") were, at the time of the occurrence, duly appointed Vermillion [sic] County Correctional Officers engaged in the conduct complained of in the course and scope of their employment with Vermillion [sic] County, under color of law, and while they were on duty.  They are sued in their individual capacities.

**ANSWER:**    Defendants Lewellyn, Reynolds, Schull and Long admit only that they were acting within the scope of their employment as correctional officers at the time of the incident in question.  Defendants make no response to the allegations that they were acting under the color of law or that they are

3

being sued in their individual capacity because said allegations state a legal conclusion.

### FACTS COMMON TO ALL COUNTS

6.    In the morning hours of May 10, 2003, Kevin Lucas ("Kevin") was allegedly acting erratically at or near the trailers at 701 S. Griffin, Lot 1, Danville, Illinois.

**ANSWER:**    Defendants admit the allegations contained in paragraph 6 of Plaintiffs' amended complaint.

7.    Kevin was allegedly knocking on the residents door at the above address asking that the occupant call the police because someone was trying to kidnap him. The occupant called 911 seeking that a officer be dispatched to the above location.

**ANSWER:**    Defendants admit the allegations contained in paragraph 7 of Plaintiffs' amended complaint.

8.    Shortly thereafter, Defendant O'Brien arrived on the scene. Kevin allegedly attempted to enter the police car when it arrived but the doors where [sic] locked.

**ANSWER:**    Defendant O'Brien admits the allegations contained in paragraph 8 of Plaintiffs' amended complaint. The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 8, and, therefore, neither admit nor deny said allegations.

9.    O'Brien had a short conversation with Kevin, and determined and believed that Kevin was high on drugs.

4

**ANSWER:**    Defendant O'Brien admits only that he had a conversation with Plaintiff Lucas and believed that Plaintiff was either intoxicated or high on drugs. The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 and, therefore, neither admit nor deny said allegations.

10.    O'Brien repeatedly instructed Kevin to relax and instructed him to take a [sic] deep breaths.

**ANSWER:**    Defendant O'Brien admits the allegations contained in paragraph 10 of Plaintiffs' amended complaint. The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10 and, therefore, neither admit nor deny said allegations.

11.    O'Brien saw that Kevin was carrying an inhaler for asthma. O'Brien had a history of asthma and was well aware of the risks associated with individuals with asthma.

**ANSWER:**    Defendant O'Brien admits only that he observed that Plaintiff Lucas was carrying an inhaler for asthma. Defendant O'Brien further admits that he had a history of asthma. Defendant O'Brien denies the remaining allegations contained in paragraph 11 of Plaintiffs' amended complaint. The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 11 and, therefore, neither admit nor deny said allegations.

12.    O'Brien allegedly saw that Kevin had a white ring of saliva around his mouth.

**ANSWER:**    Defendant O'Brien admits the allegations contained in paragraph 12 of Plaintiffs' amended complaint. The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10 and, therefore, neither admit nor deny said allegations.

5

13.     Kevin was placed under arrest by O'Brien.

**ANSWER:**     Defendants admit the allegations contained in paragraph 13 of Plaintiffs' amended complaint.

14.     During the arrest process, Kevin's body would go limp and fall to the

ground when O'Brien attempted to place Kevin into the police car.

**ANSWER:**     Defendant O'Brien admits the allegations contained in paragraph 14 of Plaintiffs' amended complaint.  The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 14 and, therefore, neither admit nor deny said allegations.

15.     Defendant Sporich [sic] arrived on th [sic] scene while O'Brien was

attempting to put Kevin into the police car.

**ANSWER:**     Defendants O'Brien and Sporcich admit the allegations contained in paragraph 15 of Plaintiffs' amended complaint.  The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 15 and, therefore, neither admit nor deny said allegations.

16.     Kevin was handcuffed and placed into O'Brien's car.

**ANSWER:**     Defendants O'Brien and Sporcich admit the allegations contained in paragraph 16 of Plaintiffs' amended complaint.  The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 16 and, therefore, neither admit nor deny said allegations.

17.     At no time prior to being handcuffed did Kevin strike either O'Brien or

Sporich [sic].

**ANSWER:**     Defendants O'Brien and Sporcich admit the allegations contained in paragraph 17 of Plaintiffs' amended complaint.  The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or

6

falsity of the allegations contained in paragraph 17 and, therefore, neither admit nor deny said allegations.

18. Kevin was then driven to the Vermillion [sic] County Public Safety Building and taken to the book-in area.

**ANSWER:**  Defendants admit the allegations contained in paragraph 18 of Plaintiffs' amended complaint.

19. Without searching Kevin and without processing him in booking, and knowing their actions and/or omissions created a strong likelihood of death or great bodily harm, the Defendants place him Kevin in a padded cell, in part, because he did not appear to be in his "right mind," and was not acting normal.

**ANSWER:**  Defendants admit only that Plaintiff Lucas was placed in a padded cell because Plaintiff was not cooperative and appeared to be under the influence of alcohol and/or drugs.  Defendants deny the remaining allegations contained in paragraph 19 of Plaintiffs' amended complaint.

20. It was apparent to the Defendants that Kevin was not acting normal during the entire time they had contact with him.

**ANSWER:**  Defendants admit only that it appeared Plaintiff Lucas was not acting "normal" during the time they had contact with him, as it appeared that Plaintiff was under the influence of either alcohol and/or drugs.

21. Kevin was placed into a county jail padded cell alone without being assessed for physical or mental status by any of the Defendants, and without being referred to a health care professional for assessment.

**ANSWER:**  Defendants admit only that Plaintiff Lucas was placed into a padded cell alone and that he was not referred to a health care professional for

assessment.  Defendants deny the remaining allegations contained in paragraph 21 of Plaintiffs' amended complaint.

22.    Before, during and after being placed in the padded cell, Defendants believed Kevin was extremely high on narcotics and/or drunk, had asthma and was not carrying an inhaler to treat his asthma.

**ANSWER:**    Defendants admit only that it appeared that Plaintiff Lucas was under the influence of alcohol and/or drugs.  The correctional officer Defendants admit that they were aware that Plaintiff had asthma and that Plaintiff Lucas did not have his inhaler with him in the jail.  Defendants deny the remaining allegations contained in paragraph 22 of Plaintiffs' amended complaint. Defendants affirmatively state that there were inhalers available at the jail and that Plaintiff Lucas never requested to use an inhaler.

23.    After placing Kevin in the padded cell, Sgt. Reynolds notified Lt. Llewellyn [sic] that Kevin as in the padded cell, that Kevin was either high or drunk and that Llewellyn [sic] should keep an eye on Kevin because he was asthmatic and did not have an inhaler.

**ANSWER:**    Defendants Reynolds and Lewellyn admit only that Reynolds notified Lewellyn that Plaintiff Lucas was in the padded cell, was either high or drunk and that Lucas was asthmatic and did not have his inhaler. Defendants Reynolds and Lewellyn deny the remaining allegations contained in paragraph 23 of Plaintiffs' amended complaint.  The remaining Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 23 and, therefore, neither admit nor deny said allegations.

24.    At know [sic] time prior to his death did any of the Defendants seek or provide medical treatment for Kevin.

**ANSWER:**    Defendants admit only that they did not seek medical treatment for Plaintiff Lucas before he was found in the padded cell.  Defendants affirmatively

8

state that it was not apparent or obvious that Plaintiff was in serious need of medical treatment while he was in the Vermilion County Jail.

25.    Kevin was placed in the padded cell at approximately 7:00 a.m. on May 10, 2003, and was pronounced dead in the cell at 11:33 a.m. on May 10, 2003.

**ANSWER:**    Defendants admit the allegations contained in paragraph 25 of Plaintiffs' amended complaint.

26.    At all relevant times decedent was under the control of the Defendants, and the Defendants created the dangers that resulted in his death.

**ANSWER:**    Defendants deny the allegations contained in paragraph 26 of Plaintiff's complaint.

27.    Once in police and county correctional officer custody, Kevin was not free to obtain his own medical treatment and had to rely upon the police and/or correction [sic] officers for medical attention.

**ANSWER:**    Defendants admit only that Plaintiff Lucas was not free to obtain his own medical treatment once he was taken into custody by the Vermilion County Defendants. Defendants deny the remaining allegations contained in paragraph 27 of Plaintiffs' amended complaint. Defendants affirmatively state that it was not apparent or obvious that Plaintiff was in serious need of medical treatment while he was in the custody of the Defendants, and further state that Plaintiff never requested any medical treatment.

28.    At all relevant times the Defendants actions and/or omissions were negligent, wilful, wanton, and/or in reckless disregard for the decedent's constitutional rights.

**ANSWER:**    Defendants deny the allegations contained in paragraph 28 of Plaintiffs' amended complaint.

9

## COUNT I

### [§ 1983 4th Amendment Claim for Failure to Provide Medical Attention - Sheriff Defendants]

29.    Plaintiff realleges paragraphs 1 through 28 as his paragraph 29.  Therefore, Defendants incorporate their answers to paragraphs 1 through 28 as their answer to paragraph 29 of Plaintiffs' amended complaint, as if fully set forth herein.

30.    The county sheriff Defendants, O'Brien and Sporich's [sic] a) failure to take any action whatsoever to treat, relieve, or revive Kevin, or to provide him with emergency medical care after taking him into custody, during or after placing him the padded call knowing these acts and/or omissions created a strong likelihood of death or great bodily harm constituted a failure to fulfill their duty to provide medical attention. This failure to provide any medical attention, assistance and care included not contacting anyone for medical assistance, not informing anyone about the probability that decedent needed medical assistance, failing to turning him over to observe him prior to leaving him in the padded cell, not sitting him up prior to leaving him in the padded cell, not removing his hand restraints, not clearing his airway, not providing cardiovascular resuscitation, and/or not providing for, requesting, or seeking, emergency assistance to do any of the above.  Above Defendants' failure to act caused Kevin to be incapable of being revived, pain, suffering and, ultimately, his death.  Such failure to fulfill their duty to provide medical attention deprived him of his right to life as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

10

**ANSWER:**  Defendants deny the allegations contained in paragraph 30 of Plaintiffs'
amended complaint.

31.    These acts and omissions by the individual sheriff Defendants proximately
caused Plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and
psychological injuries, pain, humiliation, and suffering, from the time the Defendants
restrained him until his death.

**ANSWER:**  Defendants deny the allegations contained in paragraph 31 of Plaintiffs'
amended complaint.

32.    The acts and omissions by the individual sheriff Defendants also
proximately caused the death of Kevin Lucas.

**ANSWER:**  Defendants deny the allegations contained in paragraph 32 of Plaintiffs'
amended complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any
judgment whatsoever against them, and pray this Honorable Court will enter judgment in
their favor and allow for the costs of defending this lawsuit.

## COUNT II

### [§ 1983 4th Amendment Claim for Failure to Provide
### Medical Attention - Correctional Officer Defendants]

33.    Plaintiff realleges paragraphs 1 through 28 as his paragraph 33.  Therefore,
Defendants incorporate their answers to paragraphs 1 through 28 as their answer to
paragraph 33 of Plaintiffs' amended complaint, as if fully set forth herein.

11

34.    The Correctional Officer Defendants, Llewellyn, Reynolds, Schull, and Long a) failure to take any action whatsoever to treat, relieve, or revive Kevin, or to provide him with emergency medical care after taking him into custody or after placing him the padded cell knowing these acts and/or omissions created a strong likelihood of death or great bodily harm constituted a failure to fulfill their duty to provide medical attention.  This failure to provide any medical attention, assistance and care included not turning him over, not sitting him up, not removing his hand restraints, not clearing his airway, not providing cardiovascular resuscitation, and/or not providing for, requesting, or seeking, emergency assistance to do any of the above.  Additionally, Defendant Llewellyn failed to properly supervise Defendants Reynolds, Schull, and Long after he learned that decedent was in a padded cell intoxicated, asthmatic and without his inhaler. Above Defendants' failure to act caused Kevin to be incapable of being revived, pain, suffering, and ultimately, his death.  Such failure to fulfill their duty to provide medical attention deprived him of his right to life as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**    Defendants deny the allegations contained in paragraph 34 of Plaintiffs' amended complaint.

35.    These acts and omissions by the individual correctional officer Defendants proximately caused Plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the Defendants restrained him until his death.

12

**ANSWER:**  Defendants deny the allegations contained in paragraph 35 of Plaintiffs'
amended complaint.

36.    The acts and omissions by the individual correctional officer Defendants

also proximately caused the death of Kevin Lucas.

**ANSWER:**  Defendants deny the allegations contained in paragraph 36 of Plaintiffs'
amended complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any

judgment whatsoever against them, and pray this Honorable Court will enter judgment in

their favor and allow for the costs of defending this lawsuit.

## COUNT III

### [Due Process Violation - Sheriff Defendants]

37.    Plaintiff realleges paragraphs 1 through 36 as his paragraph 37.  Therefore,

Defendants incorporate their answers to paragraphs 1 through 36 as their answers to

paragraph 37 of Plaintiffs' amended complaint, as if fully set forth herein.

38.    The county sheriff Defendants O'Brien and Sporich's [sic] wilfully,

wantonly and/or in reckless disregard for the safety of the decedent a) failed to followed

[sic] well established procedures to ensure the safety of the decedent prior to placing him

alone in a padded cell by failing to search the decedent for narcotics or weapons on his

person that could be used to injure Kevin; b) failed to monitor the decedent to ensure that

he was not unconscious or in need of medical attention; c) failed to ensure that decedent

had his inhaler; and d) failed to contact a medical provider to counteract any dangerous

13

effects of any narcotics that the decedent may have taken prior to his incarceration.  These
failures, separately or in the aggregate, to act caused Kevin to be incapable of being
revived, pain, suffering and, ultimately, his death.  Such failure to fulfill their duty to
provide follow these custodial procedures violated the decedent's Due Process rights
guaranteed by the Fourteenth Amendments [sic] to the United States Constitution.

**ANSWER:**   Defendants deny the allegations contained in paragraph 38 of Plaintiffs'
amended complaint, and specifically deny subparagraphs a, b, c and d,
inclusive thereof.

39.   These acts and omissions by the individual sheriff Defendants proximately
caused Plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and
psychological injuries, pain, humiliation, and suffering, from the time the Defendants
failed to search him until his death.

**ANSWER:**   Defendants deny the allegations contained in paragraph 39 of Plaintiffs'
amended complaint.

40.   The acts and omissions by the individual sheriff Defendants also
proximately caused the death of Kevin Lucas.

**ANSWER:**   Defendants deny the allegations contained in paragraph 40 of Plaintiffs'
amended complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any
judgment whatsoever against them, and pray this Honorable Court will enter judgment in
their favor and allow for the costs of defending this lawsuit.

## COUNT IV

### [Due Process Violation - Correctional Officer Defendants]

41.    Plaintiff realleges paragraphs 1 through 40 as his paragraph 41.  Therefore, Defendants incorporate their answers to paragraphs 1 through 40 as their answers to paragraph 41 as if fully set forth herein.

42.    The county correctional officer Defendants Llewellyn [sic], Reynolds, Schull, and Long wilfully, wantonly and/or in reckless disregard for the safety of the decedent a) failed to followed [sic] well established procedures to ensure the safety of the decedent prior to placing him alone in a padded cell by failing to search the decedent for narcotics or weapons on his person that could be used to injure Kevin; b) failed to monitor the decedent to ensure that he was not unconscious or in need of medical attention; c) failed to ensure that decedent had his inhaler; and d) failed to contact a medical provider to counteract any dangerous effects of any narcotics that the decedent may have taken prior to his incarceration.  Additionally, Defendant Llewellyn [sic] failed to properly supervise Defendants Reynolds, Schull, and Long, or anyone else, after he learned that decedent was in a padded cell intoxicated, asthmatic and without his inhaler. These failures, separately or in the aggregate, to act caused Kevin to be incapable of being revived, pain, suffering and, ultimately, his death.  Such failure to fulfill their duty to provide follow these custodial procedures violated the decedent's Due Process rights guaranteed by the Fourteenth Amendments [sic] to the United States Constitution.

15

**ANSWER:** Defendants deny the allegations contained in paragraph 42 of Plaintiffs' amended complaint, and specifically deny subparagraphs a, b, c and d, inclusive thereof.

43.    These acts and omissions by the individual correctional officers Defendants proximately caused Plaintiff's decedent Kevin Lucas to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the Defendants failed to search him until his death.

**ANSWER:** Defendants deny the allegations contained in paragraph 43 of Plaintiffs' amended complaint.

44.    The acts and omissions by the individual Defendants also proximately caused the death of Kevin Lucas.

**ANSWER:** Defendants deny the allegations contained in paragraph 44 of Plaintiffs' amended complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

### COUNT V

### [§ 1983 4th Amendment Claim for Failure to Protect - All Defendants]

45.    Plaintiffs reallege paragraphs 1 through 44 as his paragraph 45.  Therefore, Defendants incorporate their answers to paragraphs 1 through 44 as their answer to paragraph 45 of Plaintiffs' complaint, as if fully set forth herein.

46.    The acts of the Defendants, O'Brien, Sporich [sic], Llewellyn, Reynolds, Schull, and Long in failing to protect Kevin Lucas from each other's, and the other Defendant's, deadly acts which included a) allowing Kevin to be placed in a cell without being searched, b) allowing Kevin to be placed in a cell without being physically or mentally assessed, and failing to contact a health care professional, c) failing to take any action to guarantee that if he had an asthma attack that he had an asthma inhaler, knowing these acts and their failure to protect Kevin from these acts created a substantial risk of death or great bodily harm deprived Kevin of his right to life in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**    Defendants deny the allegations contained in paragraph 46 of Plaintiffs' complaint, and specifically deny subparagraphs a, b and c, inclusive thereof.

47.    Said act of these Defendants caused pain and suffering to the deceased Kevin Lucas, and ultimately his death.

**ANSWER:**    Defendants deny the allegations contained in paragraph 47 of Plaintiffs' complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT VI

**[Plaintiff's <u>Monell</u> Policy Practice and Customs Claim Against Sheriff Hartshorn]**

48.    Plaintiffs reallege paragraphs 1 through 47 as his paragraph 48.  Therefore, Defendants incorporate their answers to paragraphs 1 through 47 as their answers to paragraph 48, as if fully set forth herein.

49.    The actions of the Defendants as alleged above, were done pursuant to one or more *de facto* policies, practices and/or customs of the Vermilion County Sheriff's Office.

**ANSWER:**    Defendants deny the allegations contained in paragraph 49 of Plaintiffs' amended complaint.

50.    On and before May 10, 2003, the Defendant County Sheriff had interrelated *de facto* policies, practices,  and customs which included, <u>inter</u> <u>alia</u>, the failure to properly train, supervise, discipline, transfer, counsel and otherwise control county correctional officers engaged in the processing and monitoring of county jail detainees and/or inmates.

**ANSWER:**    Defendants deny the allegations contained in paragraph 51 of Plaintiffs' amended complaint.

51.    In particular, the Vermillion [sic] County Sheriffs and the county correctional officers were not properly trained or supervised in: 1) how to assess new detainees and/or inmates; 2) when to refer the new detainees and/or inmates to a physician for medical assistance; 3) when new detainees and/or inmates mental status required medical assistance; 4) how to frisk and/or search new detainees and/or inmates;

18

and, 5) how to monitor detainees and/or inmates with altered mental status, with asthma and/or on illegal narcotics.  This failure to train and supervise by the County Sheriff was done with the knowledge that the county correctional officers were certain to confront such persons and that without adequate training created a substantial risk of death or great bodily harm to detainees and/or inmates and Kevin Lucas' right to life in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**    Defendants deny the allegations contained in paragraph 51 of Plaintiffs' amended complaint, and specifically deny subparagraphs 1, 2, 3, 4 and 5, inclusive thereof.

52.    The County Sheriff's lack of training, supervision, policy, procedure, custom or practice created a *de facto* policy of failing to properly assess and monitor detainees and/or inmates suffering from altered mental states, physical ailments, and/or on narcotics or intoxicated.  The *de facto* policy constituted a widespread practice and was so well settled to establish a custom or usage with the force of law.

**ANSWER:**    Defendants deny the allegations contained in paragraph 52 of Plaintiffs' amended complaint.

53.    Said act of these Defendants caused pain and suffering to the deceased Kevin Lucas, and ultimately his death.

**ANSWER:**    Defendants deny the allegations contained in paragraph 53 of Plaintiffs' amended complaint.

19

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT VII

### [§ 1983 Unreasonable and Excessive Force Claim]

54.     Plaintiffs reallege paragraphs 1 through 53 as his paragraph 54.  Therefore, Defendants incorporate their answers to paragraphs 1 through 53 as their answers to paragraph 54, as if fully set forth herein.

55.     Prior to placing Kevin Lucas in a padded cell the Defendants struck Kevin Lucas about the head and body.

**ANSWER:**  Defendants deny the allegations contained in paragraph 55 of Plaintiffs' amended complaint.

56.     When placing Kevin Lucas into the padded cell the Defendants placed him chest-down on the floor handcuffed behind his back and holding his feet.

**ANSWER:**  Defendants admit the allegations contained in paragraph 56 of Plaintiffs' amended complaint.

57.     While restraining Kevin Lucas chest-down, one or more the [sic] Defendants then knelt on his back and neck in an attempt to apply pressure to those areas to prevent Kevin Lucas from moving.

**ANSWER:**  Defendants admit only that Lucas was placed chest down on the floor in the cell so that the officers could remove Lucas' handcuffs.  Answering further, Defendants state that Lucas was wiggling around while on the ground, requiring the officers to hold Lucas down so that his cuffs and some of his

clothing could be removed.  Defendants deny the remaining allegations contained in paragraph 57 of Plaintiffs' amended complaint.

58.    The acts of the Defendants in a) placing Kevin Lucas chest-down on the floor while cuffed behind his back and applying pressure to his neck and body, b) failing to protect him from said restraint while having the opportunity and duty to do so, and c) failing to properly monitor him after applying this pressure, knowing that he was asthmatic and acting usual, was an excessive use of force, constituted an unreasonable seizure and deprived him of his right to be free from an unlawful seizure and his right to life as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**    Defendants deny the allegations contained in paragraph 58 of Plaintiffs' amended complaint, and specifically deny subparagraphs a, b and c, inclusive thereof.

59.    These acts and omissions by the Defendant sheriffs and correctional officers proximately caused Plaintiff's decedent, Kevin Lucas, to suffer the above enumerated physical and psychological injuries, pain, humiliation, and suffering, from the time the Defendant restrained him until his death several minutes to hours later.

**ANSWER:**    Defendants deny the allegations contained in paragraph 59 of Plaintiffs' amended complaint.

60.    The acts of the Defendants was also a proximate cause the [sic] death of Kevin Lucas.

**ANSWER:**    Defendants deny the allegations contained in paragraph 60 of Plaintiffs' amended complaint.

21

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## Count VIII
### [State Law - Violation of Duty to Protect -
### Special Relationship - Correctional Officer Defendants]

61.    Plaintiffs reallege paragraphs 1 through 60 as his paragraph 61.  Therefore, Defendants incorporate their answers to paragraphs 1 through 60 as their answers to paragraph 61, as if fully set forth herein.

62.    Defendant county correctional officer Defendants Llewellyn, Reynolds, Schull, and Long, initiated the circumstances which created the danger to Kevin Lucas by placing him in a padded cell, placing him in a prone position in the cell, failing to monitor him, failing to contact a health care professional despite knowing that Kevin was acting erratically, knowing he was asthmatic and did not have his asthma inhaler, and knowing that such acts created a likelihood of death or great bodily harm.

**ANSWER:**   Defendants deny the allegations contained in paragraph 62 of Plaintiffs' amended complaint.

63.    From the time Kevin Lucas was brought into the county jail Kevin Lucas was in the direct and immediate control of the correctional Defendants up to and including at the time of his death; Kevin was made totally helpless as a result of the Defendants' acts.

22

**ANSWER:**   Defendants deny the allegations contained in paragraph 63 of Plaintiffs' amended complaint.

64.    The actions of these Defendants as set forth in paragraphs 1 through 57 above created a special relationship between the correctional officer Defendants and Kevin Lucas created a duty to exercise reasonable care in protecting and providing medical care to Kevin Lucas; this included the duty to monitor his condition, the duty to remove him from the dangerous and potentially deadly position they placed him in, and by failing to remove Kevin from the padded cell and providing him with medical attention, CPR and/or other life-saving medical care when they knew his condition would likely and in fact did worsen and become life threatening.

**ANSWER:**   Defendants deny the allegations contained in paragraph 64 of Plaintiffs' amended complaint.

65.    The Defendants' actions and inactions toward Kevin Lucas after incarcerating him, of leaving him lying face down in a padded cell floor for a substantial period of time, not monitoring his pulse, breathing or general condition during his incarcerated [sic], and failing to provide him with medical attention or care, negligently, willfully, wantonly, and/or in reckless disregard of his safety, breached their duty to provide reasonable care to Kevin Lucas, and caused Plaintiff's decedent pain, suffering, the terror of slowly dying, loss of consciousness, and death.

**ANSWER:**   Defendants deny the allegations contained in paragraph 65 of Plaintiffs' amended complaint.

23

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any

judgment whatsoever against them, and pray this Honorable Court will enter judgment in

their favor and allow for the costs of defending this lawsuit.

## Count IX

### [Wrongful Death Claim Under Illinois Law]

66.    Plaintiff reallege [sic] paragraphs 1 through 65 as his paragraph 66.

Therefore, Defendants incorporate their answers to paragraphs 1 through 65 as their

answers to paragraph 66 of Plaintiffs' amended complaint, as if fully set forth herein.

67.    Plaintiff-decedent was and is survived by his mother Lucille Butler, son

Kentavious Lucas, son Grayson Reed and daughter Indya Reed.

**ANSWER:**    Defendants state that they have knowledge insufficient to form a belief as to
the truth or falsity of the allegations contained in paragraph 67 of Plaintiffs'
amended complaint and, therefore, neither admit nor deny said allegations.

68.    Decedent was officially pronounced dead on May 10, 2003.

**ANSWER:**    Defendants admit the allegations contained in paragraph 68 of Plaintiffs'
amended complaint.

69.    The wrongful death of Plaintiff-decedent was proximately caused by the

reckless, willful and wanton and malicious conduct of the individual police, correctional

officers and county sheriff, as described above, as well as their negligent conduct in

violation of the special duty to protect which they created to the decedent, in violation of

740 ILCS 180/1.

24

**ANSWER:**   Defendants deny the allegations contained in paragraph 69 of Plaintiffs' amended complaint.

70.     As next of kin, Plaintiff's mother and children have lost and will continue to lose, pecuniary support, as well as society and companionship, and guidance, as a proximate result of the wrongful death of Plaintiff decedent.

**ANSWER:**   Defendants deny the allegations contained in paragraph 70 of Plaintiffs' amended complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## Count X
### [State Claim Under the Family Expense Act]

71.     Plaintiff Lucille Butler realleges paragraphs 1 through 65 as her paragraph 71. Therefore, Defendants incorporate their answers to paragraphs 1 through 65 as their answers to paragraph 71 of Plaintiffs' amended complaint, as if fully set forth herein.

72.     Plaintiff Lucille Butler was the decedent's mother.

**ANSWER:**   Defendants admit the allegations contained in paragraph 72 of Plaintiffs' amended complaint.

73.     Plaintiff Lucille Butler advanced the funds necessary for the funeral of Kevin Lucas and other related expenses.

**ANSWER:**   Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 73 of Plaintiffs' amended complaint and, therefore, neither admit nor deny said allegations.

25

74.    The said advances benefitted the family and helped to maintain it's

integrity.

**ANSWER:**    Defendants state that they have knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 74 of Plaintiffs' amended complaint and, therefore, neither admit nor deny said allegations.

75.    The Illinois Family Expense Law, 750 ILCS 65/15 entitles Lucille Butler to

reimbursement for the said advances.

**ANSWER:**    Defendants deny the allegations contained in paragraph 75 of Plaintiffs' amended complaint.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any

judgment whatsoever against them, and pray this Honorable Court will enter judgment in

their favor and allow for the costs of defending this lawsuit.

s/MICHAEL W. CONDON
Michael W. Condon, Bar Number 06192071
One of the Attorneys for Defendants Vermilion County
Sheriff W. Patrick Hartshorn, Kenneth O'Brien, Sergeant
Frank Sporcich, Vermilion County Correctional Officers
Sergeant Mark Reynolds, Officer Michael Schull, Officer
Richard Long and Lieutenant Ray Lewellyn
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Ph: 630-773-4774
Fax: 630-773-4851
mcondon@hscblaw.com

## **FIRST AFFIRMATIVE DEFENSE**

NOW COME the Defendants, VERMILION COUNTY SHERIFF W. PATRICK HARTSHORN, KENNETH O'BRIEN, SERGEANT FRANK SPORCICH, VERMILION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG and LIEUTENANT RAY LEWELLYN, by and through one of their attorneys, MICHAEL W. CONDON of HERVAS, SOTOS, CONDON & BERSANI, P.C., and, for their first affirmative defense to Plaintiffs' amended complaint state as follows:

Defendants did not violate any clearly established constitutional rights of which a reasonable person would have known, thus entitling them to qualified immunity.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

s/MICHAEL W. CONDON
Michael W. Condon, Bar Number 06192071
One of the Attorneys for Defendants Vermilion County
Sheriff W. Patrick Hartshorn, Kenneth O'Brien, Sergeant
Frank Sporcich, Vermilion County Correctional Officers
Sergeant Mark Reynolds, Officer Michael Schull, Officer
Richard Long and Lieutenant Ray Lewellyn
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Ph: 630-773-4774
Fax: 630-773-4851
mcondon@hscblaw.com

27

## SECOND AFFIRMATIVE DEFENSE

NOW COME the Defendants, VERMILION COUNTY SHERIFF W. PATRICK HARTSHORN, KENNETH O'BRIEN, SERGEANT FRANK SPORCICH, VERMILION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG and LIEUTENANT RAY LEWELLYN, by and through one of their attorneys, MICHAEL W. CONDON of HERVAS, SOTOS, CONDON & BERSANI, P.C., and, for their second affirmative defense to Plaintiffs' amended complaint state as follows:

With respect to Plaintiffs' state law claims, Defendants are immune from liability for the conduct alleged in Plaintiffs' amended complaint based on the various provisions of the Illinois Tort Immunity Act, including, but not limited to, §§ 2-201, 2-202 and 4-105.

WHEREFORE, the Defendants deny that the Plaintiffs are entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

s/MICHAEL W. CONDON
Michael W. Condon, Bar Number 06192071
One of the Attorneys for Defendants Vermilion County Sheriff
W. Patrick Hartshorn, Kenneth O'Brien, Sergeant Frank
Sporcich, Vermilion County Correctional Officers Sergeant
Mark Reynolds, Officer Michael Schull, Officer Richard Long
and Lieutenant Ray Lewellyn
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Ph: 630-773-4774        Fax: 630-773-4851
mcondon@hscblaw.com

28

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| LUCILLE BUTLER, individually, and as Special Administrator of the Estate of KEVIN LUCAS, deceased, | ) ) ) |
| | ) No. 04 CV 2048 |
| Plaintiffs, | ) |
| | ) The Honorable Michael P. McCuskey |
| v. | ) Magistrate Judge David G. Bernthal |
| | ) |
| VERMILLION COUNTY SHERIFF W. PATRICK HARTSHORN, et al., | ) ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2005, I filed the foregoing *Answer* to Plaintiffs' Amended Complaint and *Affirmative Defenses* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Dennis J. DeCaro
Kupets & DeCaro, P.C.
30 N. LaSalle Street, Suite 4020
Chicago, IL 60602
djd0089@aol.com

**s/MICHAEL W. CONDON**
Michael W. Condon, Bar Number 06192071
One of the Attorneys for the Defendants
HERVAS, SOTOS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Ph: 630-773-4774
Fax: 630-773-4851
mcondon@hscblaw.c.om

29