UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| LUCILLE BUTLER, individually, and as Special Administrator of the Estate of KEVIN LUCAS, deceased, </br></br>Plaintiffs,</br></br>v.</br></br>VERMILLION COUNTY SHERIFF PATRICK HARTSHORN, COUNTY SHERIFF KENNETH O'BRIEN, SGT. FRANK SPORICH, VERMILLION COUNTY CORRECTIONAL OFFICERS SERGEANT MARC REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG AND LT. RAY LEWELLYN,</br></br>Defendants. | 04 CV 2048</br></br>The Honorable Michael P. McCuskey</br>Magistrate Judge David G. Bernthal |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR THIRD AFFIRMATIVE DEFENSE**

NOW COMES the Defendants, VERMILION COUNTY SHERIFF PATRICK HARTSHORN, DEPUTY KENNETH O'BRIEN, SERGEANT FRANK SPORCICH, and VERMILION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG and LIEUTENANT RAY LEWELLYN, by and through one of their attorneys, JASON W. ROSE of HERVAS, CONDON & BERSANI, P.C., who reply to Plaintiff's response opposing Defendants' Third Affirmative Defense, as follows:

1.  On March 1, 2006, Defendants filed their motion for leave to file a Third Affirmative Defense ("TAD") based on the negligent conduct of Plantiff's decedent, Kevin Lucas, in the hours preceding Lucas' death on May 10, 2003. In their motion, Defendants noted that Lucas

had significant amounts of cocaine and alcohol in his system at the time of his death and the medical examiner who conducted the autopsy on Lucas concluded that Lucas died as a result of cocaine and alcohol intoxication. Additionally, Plaintiff has only recently presented an expert who opined at his deposition that Lucas (after stashing cocaine on his person after being arrested by Defendants O'Brien and Sporcich) may have snorted cocaine inside the padded cell where Lucas' body was ultimately found. Regardless of whether Lucas snorted cocaine before or after his arrest, Defendants further observed in their motion that their proposed TAD was wholly appropriate and consistent with Illinois law since individuals have a duty to exercise ordinary care for their own safety. Hobart v. Shin, 185 Ill.2d 283, 705 N.E.2d 907, 910-11 (1999). Moreover, under § 2-1116 of the Illinois Code of Civil Procedure, a plaintiff whose contributory negligence is more than 50% of the proximate cause of the injury is barred from recovering any damages.

2. On March 3, 2006, Plaintiff filed a response objecting to Defendants' motion for leave to file. On March 7, 2006, this Court entered an order indicating that it needed to review the proposed TAD before ruling on Defendants' motion. Accordingly, Defendants have attached a copy of Defendants' proposed TAD as Exhibit 1 to this pleading. However, since Plaintiff's arguments in their response warrant a reply, Defendants therefore have filed this reply brief in support of their TAD.

3. Plaintiff makes two arguments in opposition to Defendants' TAD, both which miss the mark. First, Plaintiff contends that comparative negligence only bars recovery in a negligence action but that it is not a defense when the defendant's misconduct amounts to wilful and wanton conduct. Pl's Response, p. 2, citing Peterson v. Campbell, 105 Ill.App.3d 1169, 1172 (3rd Dist.

2

1982), citing Lake Shore & M.S. Ry. Co. v. Bodemer, 139 Ill. 596, 29 N.E. 692 (1892). Since Plaintiff is claiming that Defendants acted in a wilful and wanton manner, Plaintiff contends that comparative negligence principles cannot be applied in this case. However, the two cases cited by Plaintiff do not appear to survive the Illinois Supreme Court's holding in Poole v. City of Rolling Meadows, 167 Ill.2d 41, 656 N.E.2d 768 (1995), which Plaintiff gives lip service to in his response but does not substantively address.

In Poole, the Illinois Supreme Court considered a civil rights lawsuit filed by a gunshot victim claiming that the officer who shot him engaged in wilful and wanton conduct in violation of Illinois law. Poole also alleged that the shooting violated federal law, specifically 42 U.S.C. § 1983. The jury found in Poole's favor on his state law wilful and wanton claim but reduced the award by 75% because of his contributory negligence. Poole then challenged the reduction of damages, arguing that damages based on wilful and wanton conduct by the defendant could not be reduced to account for his own contributory negligence.

The Illinois Supreme Court disagreed, holding that a defendant can still assert a comparative negligence defense even if guilty of wilful and wanton conduct so long as the defendant's wilful conduct was reckless, as opposed to intentional. 656 N.E.2d at 771. Accordingly, a jury is only precluded from reducing a defendant's damages to account for a plaintiff's comparative negligence if the defendant's wilful and wanton misconduct was intentional. On the other hand, if a defendant's conduct amounted simply to reckless wilful and wanton behavior, plaintiff's damages can and should be reduced by the percentage of comparative negligence. Id.

3

In so holding, the Supreme Court recognized that "wilful and wanton" misconduct has developed in Illinois as a hybrid between acts considered merely negligent and those found to be intentionally tortious. Id. "Under the facts of one case, wilful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, wilful and wanton acts may be only degrees less than intentional wrongdoing." Id. Accordingly, the Illinois Supreme Court struck a balance so as to allow comparative negligence to be a defense to reckless misconduct but not to intentional misconduct.

In the Amended Complaint, Plaintiff specifically alleges that Defendants engaged in "reckless" wilful and wanton conduct. In fact, Plaintiff explicitly uses the word "reckless" in describing the alleged "wilful and wanton" conduct of Defendants (¶ 65 in Count VIII of the Amended Complaint; ¶ 69 in Count IX of the Amended Complaint). Given these allegations, this case clearly falls under the Supreme Court's holding in Poole that comparative negligence can be asserted even if the defendants acted in a "wilful and wanton" manner.

4. Plaintiff's other argument in opposition to Defendants' proposed TAD appears to be based on the timeliness of Defendants' filing. Essentially, Plaintiff argues that Defendants knew at the inception of this litigation that Lucas died as a result of cocaine and alcohol intoxication. While this is true, the specific nature of Plaintiff's activities during the hours just prior to his death were not known at the time that Defendants filed their answer to the Complaint but instead have been learned over the past six months during discovery. Specifically, there have been numerous witnesses who have been deposed in the last six months, including various friends and family members who were "partying" with Lucas in the early morning prior to Lucas' arrest, who have testified regarding Plaintiff's activities on the night of his death. In any event, Plaintiff's use of cocaine and alcohol before his death has always been an issue in this case, even before Defendants moved to file their TAD.

5.  Plaintiff nevertheless suggests that a less than immediate filing of an affirmative defense is not allowed under the Federal Rules. This suggestion is misleading at the least and certainly is not the law in the Seventh Circuit. A district court "has the discretion to allow an answer to be amended to assert an affirmative defense not raised initially" and "leave shall be freely given when justice so requires." Jackson v. Rockford Housing Auth., 213 F.3d 389, 392 (7th Cir.2000) (citing Fed.R.Civ.P. 15(a)). The Seventh Circuit instructs that, as a general rule, a district court should permit a defendant to amend its answer to assert an additional affirmative defense if the plaintiff had "adequate notice [of the affirmative defense], and had an adequate opportunity to respond to it despite the defendant's tardy assertion." Id. at 392-393. A district court should only deny an affirmative defense filed later in the case if it will cause the plaintiff "undue surprise or prejudice." Id.

6.  Plaintiff cannot reasonably claim to be surprised by an affirmative defense that has been interwoven in the case since its inception. This case has always been about why Kevin Lucas died on May 10, 2003 and Plaintiff and his counsel has never disputed in this litigation that the "physical" cause of Lucas' death was the ingestion of drugs and alcohol in the hours just before his death.

7.  Plaintiff argues however that she is prejudiced by Defendants' contention in the TAD that Lucas, in effect, killed himself. Of course, that has <u>always</u> been one of Defendants' arguments in this case and would still be one of Defendants' arguments regardless of whether Defendants filed an Affirmative Defense to that effect. To be sure, Plaintiff herself alleged in the Amended Complaint (which was filed "only" ten months ago on May 2, 2005) that Lucas was "acting erratically" and irrationally prior to being picked up by Defendants O'Brien and Sporcich (Am.

5

Comp. ¶¶ 6-10), that Lucas was observed by O'Brien with a "white ring of saliva around his mouth" (¶ 12) and that Defendants failed to counteract the "dangerous effects" of narcotics that Lucas "may have taken prior to his incarceration" (¶ 38). Given these allegations from the very inception of the case, it is hard to understand how Plaintiff could be prejudiced by the inclusion of an Affirmative Defense that flows directly from the allegations in Plaintiff's Complaint.

8.    Plaintiff nevertheless claims that she would have taken an entirely different approach in the case had the TAD been raised earlier in the litigation. Again, this is hard to understand given the allegations in the Amended Complaint. Plaintiff claims that she is now precluded from presenting "expert testimony" to rebut Lucas' negligence. However, the questions of whether Lucas took cocaine and drank alcohol on the night in question and the related questions of "when," "where," and "how much" Lucas took are not proper subjects of expert testimony. Similarly, "expert testimony" would not appear to be needed on the related question of whether Lucas' ingestion of cocaine and alcohol constitutes negligence on Lucas' part. To the contrary, the questions of whether Lucas' conduct on the night of his death constituted negligence (or comparative negligence to be more precise) appears to be a quintessential question of fact best left to a jury to decide.

9.    Finally, the same sort of timeliness argument now espoused by Plaintiff was squarely rejected by the Illinois Supreme Court in Hobart, supra. In that case, the Court allowed a physician to raise his suicidal patient's contributory negligence as an affirmative defense years after the plaintiff filed her complaint. Specifically, the plaintiff in Hobart filed her complaint in December 1989 and the defendant answered the complaint in April 1990, denying that his conduct caused Hobart's death. In January 1992, the defendant filed a motion for summary

judgment, arguing that Hobart's decision to take her own life was the proximate cause of death. 705 N.E.2d at 911. In 1995, three years after the filing of defendant's motion for summary judgment and less than one month before the case was set to go to trial, the defendant filed a motion for leave to file an affirmative defense raising Hobart's contributory negligence. The plaintiff moved to strike the affirmative defense as untimely but the trial court allowed the late filing and the case proceeded to trial days later. On appeal, the Illinois Supreme Court affirmed the trial court's decision to accept the affirmative defense, noting that "the issue of the [decedent's] responsibility for her own death was sufficiently prominent in the pleading and discovery process to afford plaintiff ample opportunity to rebut the defense." 705 N.E.2d at 912.

10. Similarly, the issue of Lucas' responsibility for his own death has always been prominent in the pleading and discovery stages and this Court should therefore grant Defendants leave to file the attached Third Affirmative Defense based on Lucas' negligent conduct on May 10, 2003 just prior to his death.

            s/JASON W. ROSE
            Jason W. Rose, Attorney No. 06208130
            Michael W. Condon, Attorney No. 06192071
            Attorneys for Defendants
            HERVAS, CONDON & BERSANI, P.C.
            333 Pierce Road, Suite 195
            Itasca, IL 60243-3156
            Ph: 630-773-4774
            Fax: 630-773-4851
            jrose@hcbattorneys.com

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | )SS. |
| COUNTY OF DUPAGE | ) |

## CERTIFICATE OF SERVICE

    I hereby certify that on Monday, March 13, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant: Dennis J. DeCaro.

                                         s/JASON W. ROSE
                                         Jason W. Rose, Attorney No. 06208130
                                         Michael W. Condon, Attorney No. 06192071
                                         Attorneys for Defendants
                                         Hervas, Condon & Bersani, P.C.
                                         333 Pierce Road, Suite 195
                                         Itasca, Illinois 60143
                                         (630) 773-4774
                                         (630) 773-4851 (fax)
                                         jrose@hcbattorneys.com