**E-FILED**
Wednesday, 15 March, 2006  03:14:23 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| LUCILLE BUTLER, individually, and as Special Administrator of the Estate of KEVIN LUCAS, deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 04 CV 2048 |
| VERMILLION COUNTY SHERIFF W. PATRICK HARTSHORN, KENNETH O'BRIEN, SERGEANT FRANK SPORICH, COUNTY CORRECTIONAL OFFICERS SERGEANT MARC REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG, AND LT. RAY LLEWWELLYN, | ) ) ) ) ) ) ) ) ) | The Honorable Michael P. McCuskey Magistrate Judge David G. Bernthal |
| Defendants. | ) | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendants, VERMILION COUNTY SHERIFF PATRICK HARTSHORN, DEPUTY KENNETH O'BRIEN, SERGEANT FRANK SPORCICH, and VERMILION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS, OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG and LIEUTENANT RAY LEWELLYN, who move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support thereof, Defendants state as follows:

1.    On May 2, 2005, Plaintiff Lucille Butler filed an Amended Complaint, individually and as the special administrator for the estate of her son, Kevin Lucas.[1]  The Defendants in this case

---

[1] Although the caption refers to Lucille Butler as suing individually and as special administrator of the estate, all of the counts in the Amended Complaint simply refer to Butler in

include Vermilion County Sheriff Pat Hartshorn, in his official capacity only, and six Vermilion

County deputy sheriffs and correctional officers (Ken O'Brien, Frank Sporcich, Mark Reynolds,

Michael Schull, Richard Long, and Ray Lewellyn). Deputy O'Brien and Sgt. Sporcich (the

"Deputy Defendants") arrested Kevin Lucas on May 10, 2003 and brought him to the Vermilion

County Jail/Public Safety Building ("PSB"). Sgt. Reynolds, Lt. Lewellyn and correctional

officers Schull and Long (the "Correctional Officer Defendants") were all working at the PSB on

the morning in question.

2.      Plaintiff's claims arise out of Kevin Lucas' arrest, subsequent incarceration at the PSB,

and his death inside a PSB padded cell on the morning of May 10, 2003. The Amended

Complaint includes seven federal counts (Counts I-VII) and three state law counts (Counts VIII-

X). However, the first five Counts of the Complaint are essentially identical and all implicate the

same legal standards. Counts I and II are parallel Fourth Amendment claims asserted against the

two Deputy Defendants and the four Correctional Officer Defendants, respectively, based on

their alleged failure to provide Lucas with medical attention. Counts III and IV are parallel

Fourteenth Amendment Due Process claims which assert that Defendants failed to search Lucas

before he was placed in the padded cell at the PSB and then failed to adequately monitor Lucas

and/or contact a medical provider to counteract the effects of drugs Lucas took before his arrest.

Count V, which is captioned as a Fourth Amendment "Failure to Protect" claim, is essentially a

shadow of Counts I and II, in that Plaintiff alleges in Count V that each Defendant failed to

"protect" Lucas from the other Defendants, who again allegedly (a) did not search Lucas, (b) did

not properly assess Lucas and (c) then failed to provide Lucas with medical attention.

---

her capacity as special administrator. The only exception to that are Counts IX-X. In Count IX,
Butler refers to herself as "next of kin." In Count X, which seeks the recovery of the funeral
expenses, Butler simply refers to herself as "Plaintiff Lucille Butler" and "Lucas' mother" and
does not refer to her status as special administrator.

3.      While Counts I-V are asserted against different sets of Defendants and include slightly

different constitutional theories, Counts I-V are all based on alleged constitutional violations

created by Defendants' alleged failure to properly observe and treat Kevin Lucas during his arrest

and incarceration at the PSB.  Moreover, the constitutional standard for Counts I-V is the same in

each case:  namely, Plaintiff must show in each instance that Defendants were "deliberately

indifferent" to Lucas' known and serious medical needs and that Defendants' failure to act led to

Lucas' death inside the padded cell at the PSB.  In the context of an alleged violation of a pretrial

detainees' Fourteenth Amendment right to medical treatment, "deliberate indifference" has been

defined as actual knowledge that there was a substantial risk that the detainee might die or suffer

grievous harm if medical services were not provided, and that defendants, despite such

knowledge, deliberately imposed such risk on the detainee.  Salazar v. City of Chicago, 940 F.2d

233, 238-41 (7th Cir. 1991).

4.      Given the stringent "deliberate indifference" standard described above, Counts I-V are all

subject to summary judgment.  For starters, the undisputed evidence indicates that Lucas was

walking, conscious and communicative, was not in physical distress, never requested medical

attention and did not appear to be having a medical crisis when the Defendant Deputies

encountered him on the morning of May 10, 2003 and brought him to the PSB.  While some of

the Defendants observed Lucas act strangely and some of the Defendants believed Lucas to be

drunk or high, none of the Defendants recognized a medical crisis or perceived that Lucas needed

immediate medical attention.   Accordingly, Plaintiff cannot show that Defendants acted with

"deliberate indifference" and therefore Lucas' constitutional claims fail.  Moreover, since

Defendants acted reasonably under the circumstances, the individual Defendants are entitled to

qualified immunity on all of Plaintiff's federal claims, including Counts I-V and VII (see below).

3

5.    Summary judgment also should be granted on Plaintiff's two (2) remaining federal claims, Counts VI-VII. Plaintiff alleges in Count VII that Lucas was subjected to excessive force and that this force led to Lucas' dying in the padded cell at the PSB. However, there is no evidence in this case that the Defendants used excessive force against Lucas on May 10, 2003. Moreover, the coroner who conducted Lucas' autopsy, Dr. J. Scott Denton, testified without contradiction that Lucas had no injuries on his body at the time of death indicative of a physical beating and Denton specifically testified that Lucas did not die as a result of any use of force by the police.

6.    The sole remaining federal count is Count VI, which is Plaintiff's claim against Sheriff Patrick Hartshorn under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). In Count VI, Plaintiff alleges that Lucas died as a result of allegedly unconstitutional policies, practices and customs of Vermilion County. However, since the other federal counts are all subject to summary judgment, Count VI also fails since a Monell claim against a police department or supervisor fails in the absence of an underlying constitutional violation by an individual municipal officer. See City of Los Angeles v. Heller, 475 U.S. 796,799, 106 S.Ct. 1571 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* the [actions that would have inflicted the constitutional violation] is quite besides the point."); Thompson v. Boggs, 33 F.3d 847, 849 (7th Cir. 1994) (a verdict in favor of a municipal police officer precludes the possibility that the plaintiff could prevail on his Monell claim). Since Plaintiff's underlying constitutional claims fail as a matter of law, Plaintiff's Monell claim also fails.

4

7.    Plaintiff's three state law claims (Counts VIII-X) are also subject to summary judgment.

Count X, which was filed pursuant to Illinois' Family Expense Act ("FEA") (750 ILCS 65/15)

and which seeks to recover Lucas' funeral expenses, is most easily dispensed with since

Magistrate David Bernthal has already stated in his Report & Recommendation on July 22, 2004

in this case that "Plaintiff Butler is barred from bringing a state claim under the Family Expense

Act if her son Lucas was not a minor at the time of his death." See docket entry 11, citing Ragan

v. Protko, 383 N.E.2d 745, 748 (Ill. 1978) (the liability of a parent for medical services and

funeral expenses furnished to a child does not extend to an adult child capable of earning his own

living at the time of reaching majority).  Since Lucas was born on September 6, 1977 and was 25

years old at the time of his death in May 2003, Plaintiff cannot recover under the FEA.

8.    Plaintiff claims in Count VIII that the Defendants had a "special relationship" with Lucas

because of their arrest and incarceration of him and that they violated their duty to protect him

when they placed him in the padded cell and then allegedly failed to properly monitor him.

Similarly, Plaintiff alleges in Count IX that Defendants violated Illinois' Wrongful Death Act

(740 ILCS 180/1) when they allegedly acted negligently and/or in a "wilful and wanton" manner

so as to cause Lucas' death.  However, the slightly different rubric of Plaintiff's state law claims

does not change Defendants' entitlement to summary judgment.  For starters, Magistrate Bernthal

and Judge McCuskey have both already recognized in prior orders in this case (7/22/04–Bernthal,

8/13/04–McCuskey), that Plaintiff cannot recover under a negligence theory of liability.  See

docket entry 11 at pp. 5-6 (the special duty doctrine cannot be used to circumvent immunities

afforded to municipalities and their employees under the Illinois Tort Immunity Act (745 ILCS

10/4-105)).  Rather, to prevail on the state law claims, Plaintiff must prove "wilful and wanton

5

conduct," which is defined under Illinois' Tort Immunity Act as "a course of actions which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety" of plaintiff or his property. 745 ILCS 10/1-210. To be sure, the "wilful and wanton" requirement is spelled out directly by § 4-105 of the Illinois Tort Immunity Act, which states that governmental employees cannot be held liable for failing to provide medical care to prisoners unless that failure was the result of "wilful and wanton conduct." Bragado v. City of Zion Police Department, 788 F.Supp. 366 (N.D.Ill. 1992).

9.      Illinois' definition of "wilful and wanton" conduct is essentially the same as the definition of "deliberate indifference" under federal constitutional law. Id. at 372; Williams v. City of Chicago, 1995 WL 88926 (N.D.Ill., Nordberg, J.). Since Plaintiff's federal and state law claims are both based on the same underlying conduct and the federal and state standards governing this conduct are the same, Plaintiff's state law claims fail for the same reasons that Plaintiff's federal constitutional claims fail. Therefore, summary judgment should also be granted on Counts VIII-IX of the Amended Complaint.

10.      Finally, Lucille Butler has filed this lawsuit in her name "individually and as Special Administrator" for her son's estate. However, under the Seventh Circuit's recent holding in Russ v. Watts, 414 F.3d 783, a parent does not have any constitutional right to recover for the loss of society and companionship of an emancipated son. Accordingly, to the extent that Butler has filed this lawsuit in her individual capacity, she has no right to recover and her individual capacity claims should be dismissed.

11.      Defendants have filed a Statement of Undisputed Facts (as required by Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(D)), as well as a memorandum of law in support of this motion.

6

WHEREFORE the Defendants, VERMILION COUNTY SHERIFF PATRICK

HARTSHORN, DEPUTY KENNETH O'BRIEN, SERGEANT FRANK SPORCICH, and

VERMILION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS,

OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG and LIEUTENANT RAY

LEWELLYN respectfully request that summary judgment be granted in their favor as to all

Counts of the Amended Complaint.  Defendants further ask that this Court enter a judgment in

favor of all Defendants and that this Court award costs to Defendants.

<div style="margin-left:40%">

s/JASON W. ROSE
Jason W. Rose, Attorney No. 06208130
Michael W. Condon, Attorney No. 06192071
Attorneys for Defendants
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60243-3156
Ph: 630-773-4774
Fax: 630-773-4851
jrose@hcbattorneys.com

</div>

STATE OF ILLINOIS           )
                            )SS.
COUNTY OF DUPAGE            )

## CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, March 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant: Dennis J. DeCaro.

<div align="right">

s/JASON W. ROSE

Jason W. Rose, Attorney No. 06208130
Michael W. Condon, Attorney No. 06192071
Attorneys for Defendants
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143
(630) 773-4774
(630) 773-4851 (fax)
jrose @hcbattorneys.com

</div>