**E-FILED**
Wednesday, 15 March, 2006  03:17:07 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| LUCILLE BUTLER, individually, and as | ) | |
| Special Administrator of the Estate of | ) | |
| KEVIN LUCAS, deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 04 CV 2048 |
| | ) | |
| VERMILLION COUNTY SHERIFF | ) | |
| W. PATRICK HARTSHORN, KENNETH | ) | The Honorable Michael P. McCuskey |
| O'BRIEN, SERGEANT FRANK SPORICH,| ) | Magistrate Judge David G. Bernthal |
| COUNTY CORRECTIONAL OFFICERS | ) | |
| SERGEANT MARC REYNOLDS, | ) | |
| OFFICER MICHAEL SCHULL, OFFICER | ) | |
| RICHARD LONG, AND LT. RAY | ) | |
| LLEWWELLYN, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF PLAINTIFF'S TEN COUNTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    THE LEGAL STANDARDS GOVERNING PLAINTIFF'S FEDERAL CLAIMS
      ALLEGING A FAILURE TO PROVIDE MEDICAL ATTENTION AND A
      FAILURE TO PROTECT (COUNTS I-V) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    The "Deliberate Indifference" Requirement in "Failure to Protect"
            and "Failure to Provide Medical Attention" Claims . . . . . . . . . . . . . . . . . . . . 5

      B.    Cases Involving Inmates Or Pre-Trial Detainees Who Died in
            Jail as a Result of Drugs or Alcohol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   THE LEGAL STANDARDS GOVERNING DEFENDANTS'
      ENTITLEMENT TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  THE LEGAL STANDARDS GOVERNING PLAINTIFF'S STATE LAW
      "FAILURE TO PROTECT" CLAIM AND PLAINTIFF'S RELATED
      WRONGFUL DEATH CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
      FEDERAL "DELIBERATE INDIFFERENCE" CLAIMS (COUNTS I-V) . . . . . . . . . . 13

      A.    The Conduct of the Two Deputy Defendants (O'Brien and Sporcich) . . . . . . . . 13

      B.    The Conduct of the Four Correctional Officer Defendants
            (Reynolds, Schull, Long and Lewellyn) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
      *MONELL* CLAIM AGAINST SHERIFF HARTSHORN (COUNT VI) . . . . . . . . . . . . 19

III.  SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
      EXCESSIVE FORCE CLAIM (COUNT VII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED
     IMMUNITY AGAINST PLAINTIFF'S CLAIMS THAT THEY VIOLATED
     LUCAS' CONSTITUTIONAL RIGHTS (COUNTS I-V, VII) . . . . . . . . . . . . . . . . . . . . 20

V.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FAILURE
     TO PROTECT AND WRONGFUL DEATH CLAIMS (COUNTS VIII & IX) . . . . . . . 22

VI.  SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
     FAMILY EXPENSE ACT CLAIM (COUNT X) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . 3

Bragado v. City of Zion Police Department, 788 F.Supp. 366 (N.D.Ill. 1992) . . . . . . . . . . 13, 22

Brown v. Lee, 639 So.2d 897 (La. 5th Circ.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill.2d 429, 593 N.E.2d 522 (1992) . . . . . . . . . 12

City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571 (1986) . . . . . . . . . . . . . . . . . . . . . 19

County of El-Paso v. Dorado, 2005 WL 3254498 (Tex. App.) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Donovan v. City of Milwaukee, 17 F.3d 944 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Farmer v. Brennan, 114 S.Ct. 1970 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Frane v. Kijowski, 992 F.Supp. 985 (N.D.Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

Harinek v. 161 N. Clark St. Ltd. P'ship, 692 N.E.2d 1177 (1998) . . . . . . . . . . . . . . . . . . . . . . . 12

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Jackson v. Duckworth, 955 F.2d 21 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Kernats v. O'Sullivan, 35 F.3d 1171 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Loitz v. Remington Arms Co., Inc., 138 Ill.2d 404, 563 N.E.2d 397 (1990) . . . . . . . . . . . . . . . 12

McGill v. Duckworth, 944 F.2d 344 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978)  4, 19, 20

Payne for Hicks v. Churchich,161 F.3d 1030, 1041 n. 13 (7th Cir. 1998) . . . . . . . . . . . . . . . . . 13

Peate v. McCann, 294 F.3d 879 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Perkins v. Lawson, 312 F.3d 872 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19

Ragan v. Protko, 383 N.E.2d 745 (Ill. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rakovick v. Wade, 850 F.2d 1180 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Russ v. Watts, 414 F.3d 783 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Thomas v. Pate, 493 F.2d 151 (7th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Thompson v. Boggs, 33 F.3d 847 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Van Curen v. McClain County Board of County Comm'nrs, 4 Fed.Appx. 554, 2001 WL 55520
(10th Cir.(Okla.)1/23/01) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Watkins  v. City of Battle Creek, 273 F.3d 682 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 10

Weaver v. Shadoan, 340 F.3d 398 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Williams v. Kelso, 201 F.3d 1060 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Zentmyer v. Kendall County, 220 F.3d 805 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 11, 20

725 ILCS 5/103-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

740 ILCS 180/1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

745 ILCS 10/1-210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

745 ILCS 10/4-105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

750 ILCS 65/15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 22

Fed.R.Civ.Pro.  56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<div align="center">

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

</div>

| | | |
|---|---|---|
| LUCILLE BUTLER, individually, and as | ) | |
| Special Administrator of the Estate of | ) | |
| KEVIN LUCAS, deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 04 CV 2048 |
| | ) | |
| VERMILLION COUNTY SHERIFF | ) | |
| W. PATRICK HARTSHORN, KENNETH | ) | The Honorable Michael P. McCuskey |
| O'BRIEN, SERGEANT FRANK SPORICH,) | | Magistrate Judge David G. Bernthal |
| COUNTY CORRECTIONAL OFFICERS | ) | |
| SERGEANT MARC REYNOLDS, | ) | |
| OFFICER MICHAEL SCHULL, OFFICER | ) | |
| RICHARD LONG, AND LT. RAY | ) | |
| LLEWWELLYN, | ) | |
| | ) | |
| Defendants. | ) | |

<div align="center">

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

</div>

This case arises out of the death of 25 year old Kevin Lucas on the morning of May 10,

2003 inside a padded cell at the Vermilion County Public Safety Building ("PSB"). The

relevant undisputed facts are laid out in Defendants' Statement of Undisputed Facts ("SOF") and

are simply summarized here. In a nutshell, the evidence indicates that Lucas was drinking and

partying with friends in the early morning of May 10, 2003, first at a nightclub and then at

someone's house. Lucas asked a friend to drive him home but Lucas got out of the friend's car

before getting all the way home, claiming that he wished to walk the remaining distance. At

approximately 6:30 a.m., Lucas was knocking on the door of a home in a trailer park and telling

<div align="center">

1

</div>

the occupant of the home that people were trying to kidnap him. Defendant Deputy Ken O'Brien and Sgt. Frank Sporcich were called to the scene and believed that Lucas was drunk or high on some narcotic. After O'Brien decided to handcuff Lucas for the safety of both of them, Lucas began to walk away and pull away from O'Brien. Because of Lucas' failure to comply with the officers and his physical resistance, the two officers decided to take Lucas to the PSB on grounds of obstruction/resisting a police officer.

At the PSB, Lucas continued to act abnormally and refused to follow simple directives, although Lucas was at all times conscious, verbal and ambulatory. After a few minutes of non-cooperation, Lucas was placed in a padded cell at approximately 7:00 a.m. and was thereafter subjected to regular 30 minute cell checks by Correctional Officer Defendant Richard Long. Lucas was awake and conscious during the first inspection, conducted shortly after 7:00 a.m. During the later inspections, Long simply observed Lucas lying in the cell and assumed that Lucas was just "sleeping one off." At approximately 11:05 a.m., Long entered the padded cell to book Lucas and get him ready for lunch but Lucas would not be revived. Long's supervisor, Lt. Ray Lewellyn, was asked to come down to the cell and paramedics were called to the scene at approximately 11:18 a.m. and arrived at 11:22 a.m. The paramedics testified that rigor mortis had already set in, which suggests that Lucas died at least an hour earlier (on or before 10:22 a.m.). The medical examiner, Dr. Scott Denton, conducted an autopsy on Lucas and reviewed Lucas' toxicologic tests. Dr. Denton concluded that Lucas died as a result of "cocaine and alcohol intoxication" which caused Lucas' heart to beat irregularly and then fail altogether.

2

While Lucas' death is certainly tragic, Defendants maintain that Lucas died because of his own abuse of cocaine and alcohol and that Defendants acted reasonably in taking Lucas to the PSB, placing him in the padded cell and then conducting 30 minute cell checks. Defendants further contend that they were neither "deliberatively indifferent" to Lucas' condition (which is required to support Plaintiff's federal claims) nor did they act in a "wilful and wanton" manner (so as to support Plaintiff's state law claims). Accordingly, Defendants have filed a motion for summary judgment and this supporting memorandum of law, seeking summary judgment as to all claims and the dismissal of all Defendants.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file and/or affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c). The mere existence of factual disputes will not preclude the granting of a motion for summary judgment where the dispute does not involve a material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510 (1986). Material facts are identified by the substantive law involved, and to constitute a "genuine issue," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Id. When the evidence is not significantly probative or is merely colorable, summary judgment is proper. Id. at 249-50.

3

## SUMMARY OF PLAINTIFF'S TEN COUNTS

Any differences in the first five counts of the Amended Complaint (Counts I-V) appear to be inconsequential. Counts I-II and Counts III-IV are parallel counts asserted against the Deputy Defendants (O'Brien, Sporcich) and the Correctional Officer Defendants (Schull, Reynolds, Long, Lewellyn), respectively. The first two counts relate to Defendants' alleged failure to provide Lucas with medical attention while the latter two counts are based on Defendants' failure to search Lucas and Lucas' subsequent placement in the padded cell. Count V, which is asserted against all of the Defendants, is labeled as a "failure to protect" claim but it is altogether unclear how Count V goes beyond the allegations in Counts III-IV. To be sure, the only additional allegation in Count V is paragraph 46, which alleges that Defendants "failed to protect" Lucas when they placed him in a padded cell without searching him and assessing him. Again, these allegations mirror the allegations in Counts III-IV (see ¶¶ 38, 42 of the Amended Complaint).

Plaintiff has also included two more federal claims in the Amended Complaint. In Count VI, Plaintiff alleges that Lucas died as a result of allegedly unconstitutional policies, practices and customs of Vermilion County, in violation of Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). In Count VII, Plaintiff alleges that Lucas was subjected to excessive force and that this force led to Lucas' death in the padded cell at the PSB.[1]

---

[1] Lucille Butler has filed this lawsuit in her name "individually and as Special Administrator" for her son's estate. However, under the Seventh Circuit's recent holding in Russ v. Watts, 414 F.3d 783, a parent does not have any constitutional right to recover for the loss of society and companionship of an emancipated son. Accordingly, to the extent that Butler has filed this lawsuit in her individual capacity, she has no right to recover and her individual capacity claims should be dismissed.

4

Finally, Plaintiff has also asserted three state law counts (Counts VIII-X). Plaintiff alleges in Count VIII that the Defendant Deputies and Correctional Officers had a "special relationship" with Lucas because of Lucas' arrest and incarceration and that they violated their duty to protect him when they placed him in the padded cell and then allegedly failed to properly monitor him. Similarly, Plaintiff alleges in Count IX that Defendants violated Illinois' Wrongful Death Act (740 ILCS 180/1) when they allegedly acted negligently and/or in a "wilful and wanton" manner so as to cause Lucas' death. Count X seeks to recover Lucas' funeral expenses under Illinois' Family Expense Act ("FEA") (750 ILCS 65/15).

## THE LAW

**I.    THE LEGAL STANDARDS GOVERNING PLAINTIFF'S FEDERAL CLAIMS ALLEGING A FAILURE TO PROVIDE MEDICAL ATTENTION AND A FAILURE TO PROTECT (COUNTS I-V)**

### A.    The "Deliberate Indifference" Requirement in "Failure to Protect" and "Failure to Provide Medical Attention" Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. Amend. VIII. Under the Eighth Amendment, prison officials owe a duty to "provide humane conditions of confinement . . . [including] adequate food, clothing, shelter, and medical care . . ." Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994). Among other things, these principles prohibit jail guards from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285 (1976). Although the Eighth Amendment does not apply directly to pre-trial detainees such as Kevin Lucas, the Due Process Clause of the Fourteenth Amendment protects detainees under the same standard as the Eighth Amendment. Zentmyer v. Kendall County, 220 F.3d 805, 810 (7th Cir. 2000).

5

In order to establish an Eighth or Fourteenth Amendment claim under 42 U.S.C. § 1983, a prisoner must satisfy a two-prong test: (1) the alleged deprivation must be objectively serious, and (2) the prison official must have a sufficiently culpable state of mind (i.e., the official must have acted with "deliberate indifference" to the inmate's health or safety). Farmer, 114 S.Ct. at 1977. Deliberate indifference entails something more than mere negligence or even gross negligence. Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002). Rather, "deliberate indifference means that the officials must want harm to come to the prisoner or at least must possess total unconcern for a prisoner's welfare in the face of serious risks." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991). The "deliberate indifference" requirement creates a "high hurdle" for litigants suing correctional officials. Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002); see also Thomas v. Pate, 493 F.2d 151, 158 (7th Cir. 1974) (mere allegations of medical malpractice against governmental officials do not state a constitutional claim).

The "deliberate indifference" standard is also a subjective test, which means that a correctional official must have "actual knowledge" of an impending harm which the defendant consciously refused to prevent, though it would have been easy to do so. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992). Given this subjective requirement, a prison official cannot be found liable under the Eighth or Fourteenth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979 (1994).

6

## B.    Cases Involving Inmates Or Pre-Trial Detainees Who Died In Jail As A Result Of Drugs or Alcohol

Although the Seventh Circuit Court of Appeals has not yet considered a case with facts similar to those presented here, summary judgment has been granted by the Sixth, Eighth and Tenth Circuits in cases with similar fact patterns.

In <u>Williams v. Kelso</u>, 201 F.3d 1060 (8th Cir. 2000), the plaintiff was booked on misdemeanor charges on July 22, 1994 after a drunken assault on his wife. At the time of his booking, plaintiff was disoriented, confused and somewhat separated from reality, although he had short spells of coherency. <u>Id.</u> at 1063. Plaintiff's behavior grew increasingly erratic over the subsequent days. On July 26, plaintiff, who was apparently experiencing hallucinations at the time, got into a fight with another inmate. He was treated at a medical center and received a mental health screening reflecting that he was suffering from intermittent psychosis. It was also recommended that he be separated in jail and placed in a detox program. However, plaintiff was never taken to a detox center and was found dead in his cell that same night due to asphyxiation from toilet paper lodged in his throat. The psychologist also had instructed the jailers to check the inmate's vital signs every 4 hours but the jailers similarly failed to follow this instruction. <u>Id.</u>

Nevertheless, the Eighth Circuit granted summary judgment in favor of the jailers, holding that their conduct was negligent at best and not indicative of deliberate indifference. The Eighth Circuit indicated that it could not find any cases supporting "plaintiff's position of a § 1983 requirement of immediate medical attention to a disoriented, confused, belligerent detainee" who smells of alcohol and has been arrested on alcohol related charges. <u>Id.</u> at 1066. In considering the conduct of the classification officer who failed to isolate Williams and failed

7

to call for an immediate medical examination, the Eighth Circuit specifically "declined plaintiff's invitation to set a constitutional standard with respect to [the classification officer] or any other jail official under like conditions because he did not immediately contact a mental health professional or assign special classification to such detainee involved in drunken assaultive behavior." Id. at 1069.

In Van Curen v. McClain County Board of County Comm'nrs, 4 Fed.Appx. 554, 2001 WL 55520 (10th Cir.(Okla.-1/23/01), the Tenth Circuit considered claims filed by the estate of a pre-trial detainee who brought an action alleging that the jailers failed to provide the detainee with proper medical care for alcohol withdrawal. The detainee was a chronic alcoholic who was arrested on June 20, 1996 on charges of driving with a suspended license. Id. at 556. Three days later, he broke into the ceiling of his cell and refused to come down. He was removed, restrained and charged with attempted escape. During the second booking, the detainee stated that he was an alcoholic and the jailers noted that the detainee was paranoid and agitated. One jailer noted that the detainee was exhibiting signs of alcohol withdrawal and instructed other employees to regularly check on the detainee. However, the detainee, who was placed in a padded cell, continued to exhibit abnormal behavior for the next 36 hours. The detainee would wear his jumpsuit on his head and was otherwise incoherent and suffering from hallucinations. In the morning of June 25, the detainee was not checked for 90 minutes, after which time the detainee was found dead in his cell, his death being attributed to complications from alcoholism. Id. Nevertheless, the Tenth Circuit Court of Appeals granted summary judgment in favor of the defendant deputies and jailers, holding that the evidence was insufficient to support a finding of deliberate indifference. Id. at 558. In so holding, the Tenth Circuit noted that a pre-trial detainee must show more than negligence or even gross negligence to prevail on a constitutional "failure to protect" claim. Id. at 556.

8

More recently, in Weaver v. Shadoan, 340 F.3d 398 (6th Cir. 2003), the estate of a detainee who died in police custody after ingesting a lethal dose of cocaine filed a § 1983 action. One of the defendants had conducted a pat-down search of the detainee on the street and felt a lump in the detainee's pocket which the officer believed to be the size of 5-6 rocks of cocaine. Id. at 402. The detainee ran away but officers gave chase and ultimately took the detainee into custody. After the detainee was handcuffed, the officers checked the detainee's pockets but found no drugs. The officers noticed something in the detainee's mouth but the detainee refused to open his mouth and then appeared to swallow something. During the transport from the holding cell to the County jail, the detainee began to shake violently and slumped over in his seat. Id. at 403. An ambulance was called and paramedics were asked by the police to make an assessment for "possible drug reaction and/or overdose." However, the detainee refused treatment and claimed that he had not swallowed anything. Two hours after being taken into custody, the detainee began to get sick in the squad car. Another detainee in the squad car repeatedly stated that his cohort needed to be taken to the hospital, but this demand was ignored. By this point, the detainee was mumbling, could not walk, had to be carried into the jail and was generally "out of it" by the time that he was taken inside the jail. The detainee was placed in a cell and no one checked on him for 20 minutes. Id. at 404-05. After officials recognized that the detainee was no longer responsive, paramedics were called but to no avail. The autopsy conducted on the detainee revealed that the detainee had swallowed a lethal amount of cocaine. Id. at 405.

9

On appeal, the Sixth Circuit reversed the holding of the lower court and granted summary judgment in favor of the defendant officers. In so holding, the Sixth Circuit observed that deliberate indifference is tantamount to "criminal recklessness." Id. at 410. The Court also stressed that the officers did not see or otherwise have direct knowledge that the detainee had swallowed drugs. Id. at 411. Given these evidentiary failings, the Court indicated that the plaintiff's contention that the officers "believed" or "should have known" that detainee had swallowed drugs was insufficient to support a deliberate indifference claim. Id.

Finally, in Watkins v. City of Battle Creek, 273 F.3d 682 (6th Cir. 2002), police officers executed a search warrant of a suspected drug dealer. The suspect was found exiting a walk-in closet, where the police found a torn plastic bag with white crumbs sprinkled around it, next to a large piece of white substance (later identified as crack cocaine). The officers saw the subject licking his lips and observed a pink foamy drool coming from his mouth, but the officers did not see the subject ingest drugs. Id. at 684. The officers warned the suspect that he could die if he had swallowed cocaine but the suspect denied swallowing drugs and refused medical treatment. At the jail, the suspect complained of an upset stomach and appeared to be intoxicated but rejected medical treatment and paramedics were never called. Ultimately, the suspect was found dead in his cell. Id. at 685.

The Sixth Circuit Court of Appeals affirmed the entry of summary judgment in favor of the officers, holding that it was not enough to simply demonstrate that the officers should have known that the suspect had ingested cocaine. Id. at 686. Since the officers did not actually see the suspect ingest cocaine, there was insufficient evidence to conclude that the jailers "knew" the suspect needed immediate medical attention for drug ingestion. Id.

10

In sum, the four Circuit court opinions summarized above show that the "deliberate indifference" standard which applies to cases like this one presents a very substantial obstacle for individuals who claim that correctional officers failed to recognize a medical emergency or should have acted more quickly or in a different manner.

## II.    THE LEGAL STANDARDS GOVERNING DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982). This defense presents a substantial barrier for § 1983 plaintiffs since it is "designed to shield from civil immunity all but the plainly incompetent or those who knowingly violate the law." Donovan v. City of Milwaukee, 17 F.3d 944, 951 (7th Cir. 1994).

When considering a qualified immunity defense, courts consider (1) whether the alleged conduct violated a specific constitutional right and (2) whether the constitutional standards were clearly established at the time in question. Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994). Plaintiff bears the burden of establishing the existence of a clearly established constitutional right. Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988). The contours of the constitutional right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the other person's rights. Frane v. Kijowski, 992 F.Supp. 985, 990 (N.D.Ill. 1998).

11

### III. THE LEGAL STANDARDS GOVERNING PLAINTIFF'S STATE LAW "FAILURE TO PROTECT" CLAIM AND PLAINTIFF'S RELATED WRONGFUL DEATH CLAIM

The federal standards described above apply with equal force to Plaintiff's state law claims (Counts VIII-IX), although the state and federal cases do not use the same terminology. Specifically, for Plaintiff to prevail on his state law claims against Defendants under the Tort Immunity Act, Plaintiff must show that Defendants engaged in "wilful and wanton" conduct under Illinois law (see 745 ILCS 10/4-105 and the order entered by this Court on August 13, 2004 ("all references to negligence" in the state law counts are stricken)).[2] Section 10/1-210 of the Tort Immunity Act defines wilful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others of their property." 745 ILCS 10/1-210.

Illinois courts recognize that negligence and wilful and wanton conduct are different because wilful and wanton conduct "carries a degree of opprobrium not found in merely negligent behavior." Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill.2d 429, 593 N.E.2d 522, 532 (1992). Wilful and wanton conduct "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." Loitz v. Remington Arms Co., Inc., 138 Ill.2d 404, 563 N.E.2d 397, 402 (1990).

---

[2] Although Plaintiff claims in Count VIII of the Amended Complaint that a "special relationship" existed between Lucas and his captors, this Court has already observed that the special duty doctrine cannot be used to circumvent the immunities provided to governmental entities under the Tort Immunity Act (Report & Recommendation, dated July 23, 2004, citing Harinek v. 161 N. Clark St. Ltd. P'ship, 692 N.E.2d 1177, 1183 (1998) (the special duty doctrine operates only as an exception to the public duty rule in cases in which the legislature has not granted immunity to the municipality)). From that standpoint, the inclusion of Count VIII in the Amended Complaint does nothing to advance Plaintiff's case since the same legal standard governs both Count VIII and Count IX (Plaintiff's Wrongful Death claim).

In any event, Plaintiff's federal and state law claims "sink or swim" together since wilful and wanton conduct under Illinois law is directly analogous to the Seventh Circuit's "deliberate indifference" standard which governs Plaintiff's federal claims.  Payne for Hicks v. Churchich,161 F.3d 1030, 1041 n. 13 (7th Cir. 1998) (the standard for assessing whether conduct is wilful and wanton is "remarkably similar" to the federal courts' deliberate indifference standard);  Bragado v. City of Zion Police Department, 788 F.Supp. 366, 372 (N.D.Ill. 1992) (Illinois' definition of wilful and wanton conduct is "essentially the same" as the definition of "deliberate indifference" under federal constitutional law).

## ARGUMENT

## I.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FEDERAL "DELIBERATE INDIFFERENCE" CLAIMS (COUNTS I-V)

Summary judgment should be granted on Plaintiff's federal claims alleged in Counts I-V of the Amended Complaint because the undisputed facts do not support an inference that Defendants were "deliberately indifferent" to Plaintiff's condition.  Specifically, there is no evidence that would support a finding that any of the Defendants were subjectively aware that Lucas was experiencing a medical crisis.  Moreover, the undisputed evidence shows that the Defendants acted reasonably under the circumstances.

### A.    The Conduct of the Two Deputy Defendants (O'Brien and Sporcich)

Plaintiff claims that the two arresting officers, O'Brien and Sporcich (the "Deputy Defendants") (a) failed to provide medical attention to Lucas, (b) failed to "monitor" Lucas to determine whether medical attention was needed and (c) failed to search Lucas for weapons or contraband before he was taken to the PSB.  However, the undisputed evidence in this case

13

reveals at most that Lucas was acting strange and appeared to be drunk and/or high when the Deputy Defendants encountered him (SOF ¶¶ 11-14). Certainly, none of the individuals who were with Lucas on the morning in question before Lucas' arrest recognized a medical crisis (¶¶ 4-6) and the individual who called the police after Lucas knocked on his front door, David Decker, testified at his deposition that Lucas was coherent and was not complaining of pain or injury (¶¶ 8-10). Decker further testified that he would have told 911 that Lucas needed medical attention if he had appreciated that Lucas was sick or in need of medical attention.

Similarly, when the Deputy Defendants arrived on the scene, they did not have sufficient information to conclude that there was an ongoing medical crisis. Lucas was conscious, ambulatory and speaking at the scene of the arrest (¶ 12) and Lucas continued to talk in the squad car on the way to the PSB (¶ 20). At no time (either at the scene of the arrest or at the PSB) did Lucas complain of pain or injury or request medical attention (¶ 34). While the Deputy Defendants believed that Lucas was quite possibly drunk or high on something, there was nothing about the situation that gave Defendants any reason to believe that Lucas was any different that any other intoxicated subject. Since the Defendants did not see Lucas take drugs and Lucas did not appear to be in physical distress, Defendants did not have any "actual knowledge" of an impending harm which they consciously refused to prevent. Jackson, supra.

Again, deliberate indifference means that the Defendants must have either wanted harm to come to Lucas or must have been completely unconcerned about Lucas' welfare in the face of a substantial risk. McGill, supra. In this instance, one cannot say that Defendants' actions met this high standard in order to find them culpable for Lucas' death. Moreover, finding a constitutional violation in this case would essentially create a legal requirement wherein

14

correctional officers would be required to get arrestees immediate medical attention whenever they believed that a subject may be intoxicated or high on some drug. Alas, federal law does not require such measures. In short, this Court should decline Plaintiff's invitation to find that Defendants acted with "deliberate indifference" just because the chronology of events on May 10, 2003 ended with Lucas' unfortunate death.

In addition, Plaintiff's assertion that the Defendants are constitutionally liable for failing to search Lucas before bringing him to the PSB is without merit. In a nutshell, this claim appears to be based on Plaintiff's speculation that (a) Defendants may have found cocaine if they had patted down Lucas at the scene, (b) Lucas may have snorted cocaine inside the padded cell at the PSB and (c) Lucas may have died as a result of ingesting cocaine in his cell. There are a host of problems with this theory. While Lucas was apparently able to hide a tied bag of cocaine on his person and this bag was found next to Lucas' body after his death (SOF ¶ 52), there is no evidence that Lucas ingested cocaine inside the padded cell and there was no residue of cocaine found in the cell indicating that Lucas ever took cocaine inside the cell (SOF ¶ 53). In fact, Plaintiff's theory flies in the face of common sense since it would require a finder of fact to conclude that Lucas had the presence of mind to hide a bag of cocaine from the police at the time of his arrest (either in a body cavity or in his underwear or his socks) only to take out and untie the bag and start snorting this same cocaine after Lucas was placed inside the padded cell at the PSB. This theory would also require one to believe that, after snorting the cocaine inside the padded cell, Lucas then neatly re-tied the bag of cocaine, only to succumb to a fatal cardiac arrythmia shortly thereafter.

15

Even if one wishes to assume for the purposes of summary judgment that Lucas could have ingested cocaine inside the PSB, it still does not follow that the Defendants' failure to search Lucas and confiscate the cocaine on Lucas' person is indicative of "deliberate indifference." Clearly, the failure of both the Deputy and Correctional Officer Defendants to find Lucas' cocaine can only be considered negligence at best. To be sure, there was no evidence that any of the Defendants knew that Lucas had cocaine on his person and certainly none of the Defendants had any reason to believe that Lucas might snort cocaine at the PSB and kill himself in the process. In fact, the possibility that Lucas would have cocaine in his cell seemed quite remote since Defendants stripped Lucas down to his underwear and socks before placing him in the padded cell. While Defendants admittedly had reason to believe that Lucas may have drank alcohol or took (unknown) drugs earlier in the morning of May 10, 2003, it is another thing altogether to say that Defendants had reason to believe that Lucas had drugs on his person or that Lucas could harm himself by snorting cocaine inside the PSB. Accordingly, any "deliberate indifference" claim based on Defendants' inability to find cocaine on Lucas' person necessarily fails.

### B.     The Conduct of the Four Correctional Officer Defendants (Reynolds, Schull, Long and Lewellyn)

The allegations against the four Correctional Officer Defendants (Reynolds, Schull, Long and Lewellyn) who interacted with Lucas at the PSB are quite similar to the allegations against the Deputy Defendants who arrested Lucas. Specifically, Plaintiff alleges that the four Correctional Officer Defendants failed to search Lucas at the PSB, failed to recognize the severity of Lucas' condition and failed to get Lucas needed medical attention.

16

The same analysis described above which governs the claims against the Deputy Defendants also covers the Correctional Officer Defendants, at least with respect to Plaintiff's claim that they failed to search Lucas. Even if one assumes for purposes of summary judgment that Lucas snorted cocaine inside the PSB, it simply does not follow that the failure of the Correctional Officers to search Lucas before placing him in the padded cell amounts to "deliberate indifference." In fact, Plaintiff's failure to search claim is especially problematic with respect to the Correctional Officer Defendants since these Defendants stripped Lucas down to his underwear and his socks before placing Lucas inside the padded cell and Defendants did not find any weapons, drugs or contraband during this "stripping" of Lucas (SOF ¶¶ 31-32).

In any event, Illinois law does not require detainees to be strip searched whenever they enter a jail and, in fact, Illinois law appears to prohibit a full strip search of Lucas under the circumstances presented in this case. Specifically, the Illinois' Code of Criminal Procedure states that "no person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is reasonable belief that the individual is concealing a weapon or controlled substance." 725 ILCS 5/103-1. In this case, it would be quite a stretch to suggest that there was a reasonable belief that Lucas was concealing a controlled substance on his person simply because he appeared to be drunk and/or on narcotics. Given the facts and the law regarding strip searches, Defendants' failure to conduct a full strip search of Lucas cannot be considered an act of deliberate indifference.

17

In any event, the core claim against the Correctional Officer Defendants is that they failed to properly assess Lucas and that a more thorough assessment would have led to Lucas being seen by a doctor or medical provider. The undisputed evidence however indicates that Lucas was conscious, conversant, ambulatory and breathing normally at the PSB (¶¶ 20-25, 30, 33, 37). When Lucas saw Sgt. Reynolds upon entering the PSB, Lucas called out to him and used Reynolds' correct name (¶ 21). At no time at the PSB did Lucas ever complain of pain or request medical attention (¶ 34) and none of the Defendants ever recognized Lucas to be anything other than intoxicated or possibly on drugs (¶¶ 22, 25, 29, 35). None of the Defendants considered Lucas to be in physical distress or otherwise in need of immediate medical attention (¶ 26). Given this lack of evidence, there is simply no basis to conclude that Defendants were deliberately indifferent when they decided to place Lucas in a padded cell (¶¶ 31-33).[3]

Finally, the undisputed evidence with respect to Correctional Officer Long is that he conducted checks of Lucas' cell every 30 minutes between 7:00 a.m.-11:00 a.m. (as required by the Illinois County Jail Standards) (¶¶ 42-47, 67). Although Long was advised at the time his shift began at 7:00 a.m. that Lucas was intoxicated (¶ 38), Long did not have any other information that would have led him to conclude that Lucas was in distress or that immediate medical attention was warranted. Further, Long's initial cell check simply revealed that Lucas was lying in the cell, conscious but mumbling (¶ 42). During subsequent cell checks, Long reasonably assumed that Lucas was simply sleeping off his intoxication (¶¶ 44-49). This assumption was not unreasonable under the circumstances and certainly cannot and should not be viewed as evidence of deliberate indifference on Long's part.

---

[3] Four of the six individual Defendants sued in this case (O'Brien, Sporcich, Schull, Reynolds) had no contact with Lucas after Lucas was placed in the padded cell shortly before 7:00 a.m. on May 10, 2003 (¶¶ 38-39). Accordingly, these Defendants obviously cannot be held liable for any constitutional transgressions that allegedly occurred after Lucas was placed inside the padded cell.

Plaintiff may argue that Long should have gone inside Lucas' cell during the cell checks or that Long should have attempted to wake Lucas up earlier. These failures to act however can only be considered negligence at best and "deliberate indifference" requires more than mere negligence or even gross negligence. Perkins, supra. In conclusion, this Court should decline Plaintiff's invitation to look at this case in hindsight. Simply because the events on May 10, 2003 ended in Lucas' death does not mean that the Defendants acted with the requisite mental state or that they knew that Lucas was in great peril. To the contrary, Defendants acted reasonably under the circumstances and there was nothing about their actions that would support a finding that they acted with deliberate indifference towards a serious medical condition.

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S MONELL CLAIM AGAINST SHERIFF HARTSHORN (COUNT VI)

Plaintiff asserts in Count VI that various unconstitutional customs, policies and practices adopted by the Vermilion County Sheriff's Office ultimately led to Lucas' death. Specifically, Plaintiff claims *inter alia* that Defendants were not properly trained regarding how to assess pre-trial detainees and when to refer detainees for medical assistance. However, Plaintiff's claim, which is typically referred to as a Monell claim (Monell v. NewYork City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978)), cannot stand if the individual Defendants did not cause any constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796,799, 106 S.Ct. 1571 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* the [actions that would have inflicted the constitutional violation] is quite besides the point."); Thompson v. Boggs, 33 F.3d 847, 849 (7th Cir. 1994) (a verdict in favor of a municipal police officer

19

precludes the possibility that the plaintiff could prevail on his <u>Monell</u> claim).  Since summary

judgment is properly granted in this case in favor of the individual Defendants on Plaintiff's

various constitutional claims, Plaintiff's <u>Monell</u> claim against Sheriff Hartshorn (in his official

capacity) must also fall.

### III.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S EXCESSIVE FORCE CLAIM (COUNT VII)

Plaintiff alleges in Count VII that the Defendants used excessive force against Lucas in

violation of § 1983 and that this force ultimately deprived Lucas of his life.  However, the

medical examiner who conducted the autopsy on Lucas, Dr. Scott Denton, did not observe any

injuries on Lucas' body which he attributed to police force and Dr. Denton specifically testified

that Lucas did not die as a result of police force or trauma (¶ 59).  Therefore, summary judgment

should be granted as to Count VII.

### IV.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AGAINST PLAINTIFF'S CLAIMS THAT THEY VIOLATED LUCAS' CONSTITUTIONAL RIGHTS (COUNTS I-V, VII)

Even if this Court were to hold that Defendants' conduct violated Kevin Lucas'

constitutional rights, Defendants would still be entitled to qualified immunity since the legal

standards underlying Lucas' claims were not sufficiently clear to put Defendants on notice that

they were required to do more to prevent Lucas' death.   In other words, the law was not so clear

that a reasonable officer in Defendants' shoes would understand that what he was doing violated

Lucas' rights.  <u>Frane</u>, <u>supra</u>.  As outlined earlier in this memorandum, numerous courts have

limited the duties of jailers to provide immediate medical care to individuals who are acting

irrationally or otherwise appear to be drunk or high.  Moreover, several other district court cases

20

suggest that Defendants were not constitutionally obligated to do more than they did for Lucas. For example, in <u>Brown v. Lee</u>, 639 So.2d 897 (La. 5th Circ.), a Louisiana court held that a sheriff's office had no duty to obtain medical treatment for an arrestee, despite the fact that the arrestee appeared to be high on Ecstasy. In so holding, the court recognized that a contrary rule would create an "unreasonable duty" on the sheriff to provide medical treatment for every intoxicated person that is arrested. Similarly, in <u>County of El-Paso v. Dorado</u>, 2005 WL 3254498 (Tex. App.), a Texas court flatly indicated that there is no constitutional requirement that municipalities provide jailers with sophisticated medical training so that they will detect hidden medical problems and that a county was not required to train its jailers regarding "how to recognize the ambiguous signs of drug dependency or drug overdose." Given these cases, it was not clearly established in May 2003 (or now for that matter) that deputies and correctional officers are required to take an individual to the emergency room whenever they are confronted with a subject who appears to be drunk or high on drugs. Similarly, there is no case law in the Seventh Circuit or otherwise holding that a correctional officer in Officer Long's shoes was required to wake up a sleeping pre-trial detainee whom he reasonably believed to be sleeping off the effects of drugs or alcohol.

In conclusion, a reasonable deputy or correctional officer in Defendants' shoes would not have realized that they were constitutionally required to search Lucas for drugs, bring Lucas to the hospital, conduct more frequent cell checks or awaken Lucas after he appeared to fall asleep. Accordingly, qualified immunity exists on Plaintiff's deliberate indifference claims.

21

## V.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FAILURE TO PROTECT AND WRONGFUL DEATH CLAIMS (COUNTS VIII & IX)

As Magistrate Bernthal noted in his Report & Recommendation on July 22, 2004,

Plaintiff's state law claims cannot stand to the extent that they are based on negligent conduct.

Rather, for Plaintiff to prevail on his state law claims (Counts VIII & IV), Plaintiff must prove

that Defendants acted in a wilful and wanton manner. However, Illinois' definition of wilful and

wanton conduct is "essentially the same" as the definition of "deliberate indifference" under

federal constitutional law. Bragado, supra. Since Plaintiff's federal and state law claims are both

based on the same underlying conduct and since the federal and state standards governing this

conduct are essentially the same, then Plaintiff's state law claims fail for the same reasons that

Plaintiff's federal constitutional claims fail. Essentially, the lack of "deliberate indifference" by

Defendants means that Defendants did not act in a "wilful and wanton" manner. Therefore,

summary judgment should also be granted on Counts VIII-IX.

## VI.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FAMILY EXPENSE ACT CLAIM (COUNT X)

In Count X, Plaintiff seeks to recover Lucas' funeral expenses under Illinois' Family

Expense Act (750 ILCS 65/15). However, Count X is insufficient as a matter of law and this

Court has already indicated as much. In his Report & Recommendation in this case on July 22,

2004, Magistrate Bernthal stated that "Plaintiff Butler is barred from bringing a state claim under

the Family Expense Act if her son Lucas was not a minor at the time of his death." See Ragan v.

Protko, 383 N.E.2d 745, 748 (Ill. 1978) (the liability of a parent for medical services and funeral

expenses furnished to a child does not extend to an adult child capable of earning his own living

at the time of reaching majority). Because Plaintiff did not state Lucas' age at the time of his

death, this Court assumed at the time of its Report that Lucas was a minor. However, Lucas was

in fact born in 1977 and was 25 years old at the time of his death (SOF ¶ 1). Therefore, summary

judgment should also be granted as to Count X.

22

## **CONCLUSION**

For the reasons stated herein, Defendants, VERMILION COUNTY SHERIFF PATRICK

HARTSHORN, DEPUTY KENNETH O'BRIEN, SERGEANT FRANK SPORCICH, and

VERMILION COUNTY CORRECTIONAL OFFICERS SERGEANT MARK REYNOLDS,

OFFICER MICHAEL SCHULL, OFFICER RICHARD LONG and LIEUTENANT RAY

LEWELLYN respectfully request that summary judgment be granted in their favor and against

Plaintiff.

<div style="margin-left: 40%;">

s/JASON W. ROSE
Jason W. Rose, Attorney No. 06208130
Michael W. Condon, Attorney No. 06192071
Attorneys for Defendants
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60243-3156
Ph: 630-773-4774
Fax: 630-773-4851
jrose@hcbattorneys.com

</div>

23

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO RULE 7.1-4(b)(1)

Counsel for Defendants hereby certifies that this Memorandum of Law in Support of

Defendants' Motion for Summary Judgment was prepared using WordPerfect 9 for Windows and

complies with the type volume limitation as set by Rule 7.1-4(b)(1). This Brief contains 35,560

characters and 6,786 words per the built-in character/word count of the word-processing system

used to prepare this Brief.

s/JASON W. ROSE
Jason W. Rose, Attorney No. 06208130
Michael W. Condon, Attorney No. 06192071
Attorneys for Defendants
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143
(630) 773-4774
(630) 773-4851 (fax)
jrose @hcbattorneys.com

24

STATE OF ILLINOIS          )
                           )SS.
COUNTY OF DUPAGE           )

### CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, March 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant: Dennis J. DeCaro.

s/JASON W. ROSE

Jason W. Rose, Attorney No. 06208130
Michael W. Condon, Attorney No. 06192071
Attorneys for Defendants
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143
(630) 773-4774
(630) 773-4851 (fax)
jrose @hcbattorneys.com

25